UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON REINER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TELADOC HEALTH, INC., JASON GOREVIC, and MARK HIRSCHHORN,<br><br>Defendants. | Case No.: 1:18-cv-11603-GHW<br><br>Hon. Gregory H. Woods |

## <u>LEAD PLAINTIFFS' OBJECTION TO THE REPORT AND RECOMMENDATION TO THE HON. GREGORY H. WOODS REGARDING DEFENDANTS' MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    PRELIMINARY STATEMENT .......................................................................... 1

III.   STATEMENT OF FACTS .................................................................................. 2

    A.     Background ............................................................................................ 2

    B.     CFO Hirschhorn's Misconduct ............................................................ 3

    C.     Defendants Made Materially False and Misleading Statements and Omissions to Conceal CFO Hirschhorn's Misconduct .................................. 4

    D.     The Truth Emerges .............................................................................. 6

IV.    STANDARD OF REVIEW ................................................................................ 6

V.     PLAINTIFFS ADEQUATELY ALLEGE VIOLATIONS OF THE EXCHANGE ACT.. 7

    A.     Plaintiffs Adequately Allege that Defendants Made Materially False and Misleading Statements and Omissions ................................................ 8

    B.     The Context of Defendants' Statements Demonstrates the False and Misleading Nature of Defendants' Misrepresentations ........................... 10

    C.     Defendants' Statements Do Not Constitute Aspirational Representations ........... 12

VI.    THE RECOMMENDATION SHOULD HAVE GRANTED LEAVE TO AMEND ...... 21

VII.   CONCLUSION .................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Arkansas Teacher Ret. Sys. v. Bankrate, Inc.,*
   18 F. Supp. 3d 482 (S.D.N.Y. 2014) ..................................................................... 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... 7

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ........................................................................... 21, 22

*Basic Inc. v. Levinson,*
   485 U.S. 224, (1988) ......................................................................................... 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................. 7, 13, 14

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.,*
   433 F. Supp. 3d 515 (S.D.N.Y. 2020) ..................................................... 17, 18, 19

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.,*
   323 F. Supp. 3d 393 (S.D.N.Y. 2018) ................................................................. 10

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009) ............................................................................... 10

*GAMCO Investors, Inc. v. Vivendi Universal, S.A.,*
   838 F.3d 214 (2d Cir. 2016) ................................................................................. 8

*Ganino v. Citizens Utilities Co.,*
   228 F.3d 154 (2d Cir. 2000) ...................................................................... 7, 13, 17

*Goldman v. Belden,*
   754 F.2d 1059 (2d Cir. 1985) ............................................................................. 16

*In Petrobras Sec. Litig.,*
   116 F. Supp. 3d 368 (S.D.N.Y. 2015) ........................................................... 11, 18

*In re Banco Bradesco S.A. Sec. Litig.,*
   277 F. Supp. 3d 600 (S.D.N.Y. 2017) ................................................... 11, 12, 18

*In re Goldman Sachs Grp., Inc. Sec. Litig.,*
   2014 WL 2815571 (S.D.N.Y. June 23, 2014) ...................................................... 15

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) ................................................................................ 13

*In re Signet Jewelers Ltd. Sec. Litig.*,
   389 F. Supp. 3d 221 (S.D.N.Y. 2019) ........................................................... 11, 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ................................................ 13, 15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................................................... 21

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986) ................................................................................. 21

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ............................................................................................. 10

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ........................................................................................... 14

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ............................................................................... 11

*Oklahoma Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
   444 F. Supp. 3d 550 (S.D.N.Y. 2020) ................................................... 17, 19, 20

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017) ............................................................................... 21

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
   2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) .................................................... 10

*Richman v. Goldman Sachs Grp., Inc.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................ 18

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ............................................................................... 13

*Schiro v. Cemex, S.A.B. de C.V.*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................ 22

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019) ................................................................................. 11

*Stream SICAV v. Wang*,
  989 F. Supp. 2d 264 (S.D.N.Y. 2013) ................................................................. 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................... 7, 8, 16, 20

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ................................................................................ 10

*Ulbricht v. Ternium S.A.*,
  2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) .................................................. 21, 22

STATUTES

15 U.S.C. §78j(b) ........................................................................................... 7

15 U.S.C. §78u-4(b)(1)(B) ................................................................................ 8

28 U.S.C. §636(b)(1)(C) ................................................................................... 6

RULES

Fed. R. Civ. P. 72 ....................................................................................... 1, 6

REGULATIONS

17 C.F.R. §240.10b-5(b) ................................................................................. 1, 8

OTHER AUTHORITIES

Marc I. Gross, *Reputation and Securities Fraud Litigation*,
  47 No. 2 Securities Regulation Law Journal 99, 104 (Summer 2019) ....................................... 17

## I.      INTRODUCTION

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Lead Plaintiffs Wayne Arcuri, Badruddin Salimbhai, and David Williams, (collectively "Plaintiffs") hereby object to the Report and Recommendation to the Hon. Gregory H. Woods ("Recommendation") Regarding Defendants' Motion to Dismiss ("Motion") in this securities class action.   In the Recommendation, Magistrate Judge Moses determined that Plaintiffs did not adequately plead falsity pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5(b)), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").   For the reasons below, Plaintiffs respectfully object to the Recommendation.

## II.     PRELIMINARY STATEMENT

Plaintiffs bring this action against Teladoc Health, Inc. ("Teladoc" or the "Company"), its Chief Executive Officer ("CEO") Jason Gorevic ("Gorevic"), and its former Chief Financial Officer ("CFO") Mark Hirschhorn ("Hirschhorn") (collectively "Defendants").   Plaintiffs assert their claims on behalf of all those that acquired Teladoc's securities from March 3, 2016, through December 5, 2018, inclusive (the "Class Period").   Defendants committed securities fraud by touting Teladoc's internal ethics policies, including prohibitions against retaliation against whistleblowers, while failing to enforce such policies in response to known misconduct by one of its senior executives.

Teladoc is a virtual health care company.   In violation of Teladoc's Code of Business Conduct and Ethics ("CBCE"), CFO Hirschhorn engaged in an improper romantic relationship with Charece Griffin ("Griffin"), a lower-level employee, for at least two-and-a-half years.   As part of this improper relationship, Defendant Hirschhorn promoted Griffin well beyond her

qualifications, which led to significant disruptions to an important aspect of Teladoc's business. CFO Hirschhorn also gave Griffin money to trade the Company's stock and instructed her when to buy and sell.

When employees reported this misconduct, Teladoc's senior management's purported "punishment" of CFO Hirschhorn was a slap on the wrist. The Company merely suspended the vesting of all of his outstanding unvested equity-based awards for one year, while keeping him as CFO and ***promoting*** him to Chief Operating Officer ("COO"). In contrast, the whistleblowers who reported Defendant Hirschhorn, including a Vice President, were harassed and, in due course, fired by the Company. Defendants concealed this misconduct from investors, and when a third party investigated and published a report revealing the truth, Defendants continued to mislead investors about the Company's response.

While acknowledging that courts have allowed claims based upon misrepresentations contained in a code of ethics or conduct to survive a motion to dismiss in certain circumstances, the Recommendation held that such circumstances do not exist here. Recommendation at 18. Plaintiffs respectfully object to the Recommendation.

## III.   STATEMENT OF FACTS

### A.   Background

Teladoc provides telehealth services, serving health plans, health systems, and other entities. ¶35.[1] The Company was the first telehealth company to achieve certification by the National Committee for Quality Assurance ("NCQA"), an outside entity that provides accreditation to healthcare companies. ¶47. At all relevant times, Defendant Gorevic was the Company's CEO. Defendant Hirschhorn became the Company's Executive Vice President and

---

[1]     Unless otherwise indicated, all paragraph ("¶") references are to Plaintiffs' Second Amended Class Action Complaint ("Complaint"), all emphasis is added, and all internal quotations and citations are omitted. All "Doc." references are to the docket entries on the Court's Electronic Case Filing system.

CFO in October 2012, and he took on the additional role of COO in September 2016.  ¶26.  CFO Hirschhorn resigned from the Company on or about December 17, 2018.  ¶14.  Teladoc maintained a CBCE governing the conduct of its employees, officers, and directors.  ¶27.

### B.    CFO Hirschhorn's Misconduct

CFO Hirschhorn began a sexual relationship with Griffin, a junior employee at the Company's credentialing unit in Lewisville, Texas, after she joined Teladoc in 2014.  ¶¶29-30.  The relationship, which lasted for at least two-and-a-half years, was common knowledge in the Lewisville office, with employees openly discussing it at work.  ¶¶30-31.  Indeed, Griffin bragged to multiple co-workers that in addition to their personal relationship, Hirschhorn and Griffin traded Teladoc stock together, with Hirschhorn giving Griffin money for trading and advising her on when to buy and sell stock.  ¶33.  By virtue of her improper relationship with Hirschhorn, Griffin received a series of promotions over colleagues with either more experience or better credentials, which caused consternation and disruption in her department.  ¶13.

After multiple complaints from other Teladoc employees, in October 2016, Amy McKay ("McKay"), Teladoc's Clinical Director, Vice President of the Payor Relations unit, and Griffin's ultimate boss, drafted an eight-page document that set forth a timeline of the improper relationship between Hirschhorn and Griffin.  ¶¶6, 35.  The letter detailed complaints of unfairness in connection with Griffin's stock trades that other Teladoc employees raised.  *Id*.  McKay transmitted her report to the Company's Director of Human Resources and Chief Legal Officer.  ¶¶35-36.  Several other Teladoc employees also complained directly to the Company's Human Resources department about the situation.  ¶¶8, 55.

No later than October 2, 2016, McKay and several other Teladoc employees began to receive harassing emails to their Teladoc corporate email addresses from pseudonymous email

addresses, which contained spurious accusations and indications that the recipients were being followed.  ¶¶37-40.  The employees who received these emails previously complained to Teladoc's human resources department about the Hirschhorn-Griffin relationship.  ¶¶8, 55.  In fact, the emails were so alarming that two employees filed reports with the police.  ¶¶39-50.  As employees were being harassed after reporting the improper relationship to Teladoc's human resources department, on September 28, 2016, the Company promoted Hirschhorn to COO.  ¶55.

By November 2016, Teladoc had retained an outside law firm to investigate McKay's allegations regarding Defendant Hirschhorn and Griffin.  ¶42.  The investigation confirmed that Hirschhorn had acted inappropriately.  ¶43.  The result for Hirschhorn was only two minor rebukes: (1) on December 27, 2016, the Company entered into an amended employment contract with Hirschhorn, which included a prohibition from violating the employee handbook (which, presumably, he had been required to follow already); and (2) for a period of one year, a suspension of the scheduled share vesting awarded to him as part of his compensation.  *Id.*

In stark contrast, the Company's actions against employees who reported CFO Hirschhorn's misconduct was far more punitive.  Indeed, Teladoc fired McKay in October 2017.  ¶44.  At least one other employee who reported Hirschhorn's misconduct was also fired by a manager who reported to Hirschhorn.  ¶45.

### C.   Defendants Made Materially False and Misleading Statements and Omissions to Conceal CFO Hirschhorn's Misconduct

Throughout the Class Period, Defendants acknowledged that employment claims resulting from executives' misconduct were a risk to the Company.  ¶¶57-58.  Defendants also repeatedly told investors that the Company was "committed to the highest standards of integrity and ethics in the way it conducts business" and touted its CBCE and corporate governance program.  ¶¶60, 66, 68, 70-72, 74, 76-77.  Defendants emphasized that the CBCE applied to all

of Teledoc's directors, officers, and employees, and specifically mentioned the CEO and CFO. ¶¶61, 71, 77.  Defendants did not, however, disclose that CFO Hirschhorn had engaged in an inappropriate relationship and carried our misconduct that exposed the Company to legal risk and material operational consequences.

The CBCE provided, among other things, that:

- "Using non-public, Company information to trade in securities, or providing a family member, friend or any other person with a 'tip', is illegal.  All such non-public information should be considered inside information and should never be used for personal gain." Complaint, Ex. D at 1;

- "All employees, officers and directors should avoid situations that present a potential or actual conflict between their interest and the interest of the Company. A 'conflict of interest' occurs when a person's private interest interferes in any way, or even appears to interfere, with the interest of the Company, including its subsidiaries and affiliates.  A conflict of interest can arise when an employee, officer or director takes an action or has an interest that may make it difficult for him or her to perform his or her work objectively and effectively." *Id.* at 2;

- "All employees, officers and directors are expected to comply with all of the provisions of this Code.  The Code will be strictly enforced throughout the Company and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action such as dismissal or removal from office." *Id.* at 4;

- "The Company encourages all employees, officers and directors to report any suspected violations promptly and intends to thoroughly investigate any good faith reports of violations.  The Company will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith." *Id.* at 5.

Throughout this time, knowing about his misconduct and the consequences that it created for the Company, CFO Hirschhorn sold or exercised Teladoc stock options equivalent to 275,000 shares for almost $8 million before commissions and taxes.  ¶81.  Through November 2, 2018, Defendant Hirschhorn sold another 265,000 shares (nearly 99% of what he held in January of that year), for approximately $13 million in proceeds.  He also sold more than $700,000 worth of Teladoc shares on Friday, November 2, 2018, on the eve of the public disclosure of his

misconduct and the Company's attempt to whitewash it.  *Id.*  CEO Gorevic also sold nearly $15 million worth of stock during the Class Period.  *Id.*

### D.   The Truth Emerges

On December 5, 2018, the Southern Investigative Research Foundation ("SIRF") published a report (the "SIRF Report") revealing Hirschhorn's affair with Griffin.  ¶13.  SIRF reported that during the relationship, Griffin had received a series of promotions over colleagues with either more industry experience or better credentials, and that she and Hirschhorn "liked to trade Teladoc Health's stock together," with Hirschhorn "tell[ing] her when he thought there were good opportunities to sell some shares."  *Id.*  The SIRF Report further revealed that after McKay reported Hirschhorn's inappropriate conduct internally, she was fired, while Hirschhorn "stayed [in his position] with nearly nary a consequence."  *Id.*  In response to the publication of the SIRF Report, Teladoc's stock price fell sharply by $4.00, or 6.69%, to close at $55.81 on December 6, 2018.  *Id.*  On or about December 17, 2018, Hirschhorn resigned from Teladoc amid accusations of misconduct.  ¶14.[2]

## IV.   STANDARD OF REVIEW

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §636(b)(1)(C), this Court reviews *de novo* the portions of the Recommendation to which a party objects.  In so doing, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1)(C).  The Court "may

---

[2]     Seeking to dampen the impact of the SIRF report, Defendant Gorevic misrepresented that: (1) Teladoc was unaware of Hirschhorn's improper relationship with a subordinate at the time of his promotion to COO; and (2) McKay was not terminated for reporting the relationship and left voluntarily because she did not want to relocate to Boston following a restructuring.  ¶54.  First, the police reports indicate that the email harassment against McKay and other Teladoc personnel began no later than October 2, 2016.  ¶55.  Therefore, McKay and other personnel must have reported the improper Hirschhorn-Griffin relationship to senior management well before then.  *Id.* Therefore, it is highly unlikely that senior management was ignorant of Hirschhorn's misconduct when they promoted to COO on September 28, 2016.  Second, the police report filed by McKay, along with the account of her firing, are flatly inconsistent with Gorevic's representation that McKay left voluntarily.  ¶56.

also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a court is not free to dismiss based on its "disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555-56. Rather, courts must engage in "comparative assessment of plausible inferences, while constantly assuming the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27. Courts must also draw "all reasonable inferences in the plaintiffs' favor." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

## V.   PLAINTIFFS ADEQUATELY ALLEGE VIOLATIONS OF THE EXCHANGE ACT

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b). SEC Rule 10b-5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make

the statements made, in light of the circumstances under which they were made, not misleading."

17 C.F.R. §240.10b-5(b).  Section 10(b) "affords a right of action to purchasers or sellers of

securities injured by its violation."  *Tellabs*, 551 U.S. at 318.

Under the PSLRA, a plaintiff adequately pleads falsity by "specify[ing] each statement

alleged to have been misleading" and "the reason or reasons why the statement is misleading."

15 U.S.C. §78u-4(b)(1)(B).  To state a claim under Section 10(b) and SEC Rule 10b-5, a plaintiff

must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a

connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

*GAMCO Investors, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016).  The

Recommendation only addresses the element of falsity.

### A.     Plaintiffs Adequately Allege that Defendants Made Materially False and Misleading Statements and Omissions

During the Class Period, Defendants misrepresented to investors that: (1) the CBCE

"applies to all of our employees, officers and directors, including our chief executive officer,

chief financial officer, and all other executive and senior officers" (¶61; *see also* ¶¶71, 77

(stating that CBCE "applies to all directors, officers and employees")); (2) "each of our directors

and employees is required to report suspected or actual violations [of the CBCE]" (¶61); (3) the

Company maintains an "Insider Trading Compliance Policy that applies to all securities issued

by Teladoc" (¶79); (4) "[t]he purpose of [the CBCE] is to promote honest and ethical conduct for

conducting the business of the Company consistent with the highest standards of business ethics

(¶¶71, 77); and (5) "Teladoc is committed to the highest standards of integrity and ethics in the

way it conducts business."  ¶60.

The CBCE specifically provided, among other things, that: (1) nonpublic Company information "should never be used for personal gain" (Complaint Ex. D at 1); (2) all employees, officers and directors should avoid situations in which his or her "private interest interferes in any way, or even appears to interfere, with the interest of the Company," or "take[] an action . . . that may make it difficult for him or her to perform his or her work objectively and effectively" (*id.* at 2); (3) the CBCE "will be strictly enforced throughout the Company and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action such as dismissal or removal from office" (*id.* at 4); and (4) the Company "will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith" (*id.* at 5).

Plaintiffs sufficiently allege that Defendants' representations were materially false and misleading. CFO Hirschhorn – as one of the Company's highest-ranking executives – committed serious violations of the CBCE by engaging in an improper romantic relationship with Griffin, a lower-level employee, that lasted at least two-and-a-half years. ¶31. Defendant Hirschhorn also promoted Griffin well beyond her qualifications, leading to significant disruptions to an important aspect of Teladoc's business. ¶¶13, 36-53. Additionally, CFO Hirschhorn gave money to Griffin to trade the Company's stock and instructed her when to buy and sell. ¶¶28, 33. When whistleblowers reported Defendant Hirschhorn's violations to other members of senior management, Defendants' response, concealed from investors, was to ***promote*** him to COO, while allowing him to maintain his CFO title. ¶8. In contrast, Teladoc took no action in response to the harassment committed against the whistleblowers (¶¶37-41), and instead pushed the whistleblowers out of the Company, including McKay, a Company Vice

President.   ¶¶44-45.   Even after a third party publicly revealed Hirschhorn's violations,
Defendants materially misled investors about the Company's response.   ¶¶54-56.

B.   **The Context of Defendants' Statements Demonstrates the False and Misleading Nature of Defendants' Misrepresentations**

Although the Recommendation correctly recognized that "context matters" when evaluating falsity (Recommendation at 21), respectfully, it incorrectly applied this principle to this case.   As this Court recently held, "[w]hether a representation is mere puffery depends, in part, on the context in which it is made."   *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at *10 (S.D.N.Y. Apr. 14, 2020).

"[The] materiality requirement is satisfied when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."   *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).   "[A] complaint may not properly be dismissed on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."   *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).   "This is because the determination of whether a false or misleading statement or omission is material requires courts to engage in a fact-specific inquiry that depends on all relevant circumstances and because materiality is a mixed question of law and fact."   *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 440 (S.D.N.Y. 2018) (Woods, J.); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (stating that materiality "requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact").

In determining whether a statement is immaterial, courts consider the context in which the statement was made.  *See, e.g.*, *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (holding that statements must be "evaluated not only by literal truth, but by context and manner of presentation"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647 (S.D.N.Y. 2017) ("Whether a representation is mere puffery depends, in part, on the context in which it is made.") (citing *In Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015)); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (finding general statements that inventory was "in good shape" and "under control" actionable where defendants knew contrary was true); *Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 485 (S.D.N.Y. 2014) ("[W]hile a term like 'high quality' might be mere puffery or insufficiently specific to support liability in some contexts, it is clearly a material misrepresentation when applied to assets that are entirely worthless[.]")).

Accordingly, courts have rejected the "position that code statements can *never* be material as a matter of law." *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 230 (S.D.N.Y. 2019) (discussing *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019)), *reconsideration denied*, No. 16 Civ. 6728 (CM) (RWL), 2019 WL 2656338 (S.D.N.Y. June 20, 2019).  Instead, courts must consider whether the statements "comport (or contradict) the company's other disclosures and conduct."  *Signet Jewelers*, 389 F. Supp. 3d at 230.  Even if statements about internal ethics policies may be examples of inactionable puffery when viewed in isolation, "the context in which they were made could lead a reasonable investor to rely on them as reflective of the true state of affairs at the [c]ompany."  *Banco Bradesco*, 277 F. Supp. 3d at 647; *Petrobras*, 116 F. Supp. 3d at 381.

The Recommendation fails to consider Defendants' statements within the context of Teladoc's non-enforcement of the CBCE against one of its most senior executives.  Plaintiffs'

claims are not premised **solely** upon CFO Hirschhorn's series of violations of the CBCE over a period of years.  Rather, they are premised on Teladoc's undisclosed decision to respond to these violations by giving Hirschhorn a promotion (alongside a mere slap on the wrist), while more severely punishing the whistleblowers.  Thus, the Company's response effectively nullified the CBCE, at least as applied to senior executives, throughout the Class Period.  *See Signet Jewelers*, 389 F. Supp. 3d at 230 (holding that courts must consider whether statements "comport (or contradict) the company's other disclosures and conduct").

### C.   Defendants' Statements Do Not Constitute Aspirational Representations

Respectfully, the Recommendation also incorrectly deems Teladoc's CBCE to employ "aspirational and hortatory" language.  Recommendation at 19.  In *Banco Bradesco*, this Court explained two "acknowledged limits" to the principle that statements about internal ethics policies are puffery, both of which are applicable here.  277 F. Supp. 3d at 659.  First, to the extent that ethics statements do not express mere aspiration, they may be actionable.  *Id.* at 660.  And second, investors may rely upon the implied representation that the issuer actually holds the aspirations expressed by its ethics statements.  *Id.*

Here, "not all portions of [Defendants' challenged] statements express mere aspiration." *Id.* at 660.  Like in *Banco Bradesco*, Defendants represented that the CBCE applied to all directors, officers, and employees, specifically including Teladoc's CFO.  ¶¶61, 71, 77.  In reality, the CBCE was not meaningfully enforced against CFO Hirschhorn.  "While it may not be reasonable for an investor to rely on [Defendants'] statements as ensuring that no employee" would engage in misconduct, "the Court cannot conclude that reasonable investors could not at least rely on those statements as reflecting that [Teladoc's] senior-most officers . . . were not simultaneously doing so." *Banco Bradesco*, 277 F. Supp. 3d at 660.

The Recommendation's conclusion to the contrary is erroneous. For instance, the Recommendation held that "[t]he Court reads the phrase somewhat differently, as expressing the familiar aspiration that all corporate employees, including the most senior officers, hold themselves to the same ethical standards" (Recommendation at 19 n.10). Relatedly, the Recommendation also states that Plaintiffs' allegations regarding FE2 "that he or she was pushed out of the company in retaliation for whistleblowing are simply not plausible." Recommendation at 22 n.13. Thus, the Recommendation fails to draw "all reasonable inferences in the plaintiffs' favor." *Ganino*, 228 F.3d at 161. A court is not free to dismiss based on its "disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555-56.[3]

Another non-aspirational statement, the CBCE itself, represented that the Company did not tolerate any kind of retaliation against whistleblowers. Complaint, Ex. D at 5. Teladoc's treatment of McKay and FE2, who were harassed and later fired after reporting Hirschhorn's violations, belie that statement as well. *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM), 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018) (holding that "statements contained in a code of conduct are actionable where they are directly at odds with the conduct alleged in a complaint"). Indeed, Magistrate Judge Moses recognized this distinction during the hearing on Defendants' Motion:

> Let me focus you, Ms. Soloway, not on the broad aspirational language that you've just focused on, but on certain other statements which are made in the CBCE in the code which appear to be a little closer to what you call the *Signet* basket where the company's statements assure the public, reassure the public that there is a code which is not just on paper, but is actually being employed to

---

[3]    The Recommendation describes the allegations regarding FE2 as thin (Recommendation at 22 n.13) while failing to appreciate that "[e]ven with the heightened pleading standard under Rule 9(b) and the Securities Reform Act we do not require the pleading of detailed evidentiary matter in securities litigation." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001). Such details are "likely to be exclusively within the control of defendants." *Rombach v. Chang*, 355 F.3d 164, 175 n.10 (2d Cir. 2004).

keep employees from violating these various principles but in reality is not being employed or is not being applied and therefore is not doing its job.

*So with that basket in mind, I do note, and the plaintiffs highlight this in their brief, that the CBCE says things like all employees, officers and directors are expected to comply with all of the provisions of the code. The code, quote, "will be strictly enforced throughout the company and violations will be dealt with immediately including subjecting persons to corrective and/or disciplinary actions such as dismissal or removal from office." And elsewhere in the code it says, quote, "the company will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith." That's a little more than aspirational, that could be characterized as a commitment to the public to enforce, to enforce the code vigorously. And could an argument be made here that this case fits into or at least edges close to the Signet basket because those assurances proved, as alleged by plaintiffs, not to be true given that again, as alleged by plaintiffs, Mr. Hirschhorn was not dismissed, was not removed from office, was given a rather lenient corrective action and again, according to plaintiffs, the whistleblower in the case was retaliated against.*

Doc. 63 at 14-15. Thus, although Magistrate Judge Moses acknowledged that it was plausible for Plaintiffs to assert that Defendants' representations were "a little more than aspirational" and for Plaintiffs to allege that Defendants' statements "could be characterized as a commitment to the public to enforce, to enforce the code vigorously," it was improper for the Recommendation to disregard Plaintiffs' plausible inference at the pleading stage. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555–56; *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Additionally, the Recommendation erroneously casts this case as being premised solely on a single executive's violation of the CBCE (Recommendation at 23), and attempts to minimize the inappropriate conduct because it did not constitute "sexual harassment" or "bribery." Recommendation at 21. But this case is not primarily about the violation; it is about the Company's response. Defendants' ethics statements are not fraudulent just because CFO Hirschhorn violated the CBCE; they are fraudulent because the actions of Teladoc's senior

management, upon learning of Hirschhorn's violations, demonstrated that the CBCE did not apply to senior executives such as Hirschhorn.

Thus, the *response* of Teladoc's senior management to CFO Hirschhorn's violations directly contradicted their representations to investors that, for example: (1) the CBCE applied to all Teladoc employees, *officers*, and directors; (2) the Company did not tolerate any kind of retaliation against whistleblowers; (3) the purpose of the CBCE was to promote honest and ethical conduct; and (4) the Company was committed to the highest standards of integrity and ethics. The undisclosed, material caveat to these representations was that executive officers were essentially exempted; their misconduct would not be meaningfully punished, while reporting the misconduct of executive officers *would* be punished. Thus, Defendants' misrepresentations were not aspirational, but false statements of material fact.

Moreover, "even to the extent [Defendants' ethics] statements were merely aspirational, investors could have relied at least on the notion that the Company held such aspirations." *Signet*, 2018 WL 6167889, at *17. "In alleging that executives in the highest echelons of [Teladoc] were actively involved in" serious violations of the CBCE (Hirschhorn), promoting him despite their knowledge of his violations, or retaliating against those who reported him, "Plaintiff has adequately alleged that no such aspirations were at play." *See id.* (citing *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 274 (S.D.N.Y. 2013) ("It is well settled that, when defendants knowingly or recklessly fail to follow policies announced in their public filings, they may cause those filings to be materially misleading in that the disclosed policy no longer reflects actual practice."); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-3461 (PAC), 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) (holding actionable statements that "we have extensive procedures and controls that are designed to . . . address conflicts of interest" and "we

increasingly have to address potential conflicts of interest," because company's "representations about its purported controls for avoiding conflicts were directly at odds with its alleged conduct")).  Thus, Defendants' statements about the CBCE's purpose "to promote honest and ethical conduct for conducting the business of the Company consistent with the highest standards of business ethics" and Teladoc's commitment "to the highest standards of integrity and ethics in the way it conducts business" are materially misleading by representing to investors that Defendants had aspirations of compliance with, and enforcement of, the CBCE that they did not actually hold.

Additionally, the Recommendation's analysis of the facts alleged erroneously attempts to resolve disputed factual matters at the pleading stage.  For example, among other things, the Recommendation improperly concludes that "Teladoc took McKay's memo seriously" and disbelieves Plaintiffs' allegations that the Company fired McKay.  Recommendation at 22. Resolution of such disputed facts is for a jury, not the court on a motion to dismiss.  *Goldman v. Belden*, 754 F.2d 1059, 1065-68 (2d Cir. 1985).  Indeed, a court's comparative assessment of plausible inferences from the facts alleged does not allow the court to resolve conflicting evidence that is "within the jury's authority."  *Tellabs*, 551 U.S. at 328.

The Recommendation also attempts to distinguish *Signet Jewelers* and *Banco Brandesco* partially on grounds that the sexual misconduct in those cases was "pervasive" rather than perpetrated by one individual.  (Recommendation at 23).  However, in so doing, it failed to acknowledge that misconduct by the third highest officer in the company – and the way the Company handled (or failed to handle) that misconduct – had a profound impact on the

Company's reputation, as evidenced by the significant 6.69% stock drop when the information was disclosed. *Ganino*, 228 F.3d at 166.[4]

The Recommendation also failed to recognize the distinctions that render *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515 (S.D.N.Y. 2020) and *Oklahoma Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550 (S.D.N.Y. 2020) inapplicable.  In *CBS*, for instance, CBS actually sought in good faith to enforce its ethics code against senior executives – unlike the situation here.  The court there described several instances in which CBS investigated, suspended, or terminated certain senior-level managers.  *CBS*, 2020 WL 248729, at *2, *9 (stating that allegations showed that CBS "acted as the [ethics code] said it would").  Specifically, CBS conducted an investigation into CEO Leslie Moonves's conduct and ultimately terminated him for cause.  *Id*. at *3.  Plaintiffs in *CBS* did not allege, as Plaintiffs do here, that CBS knew about – but failed to investigate or appropriately punish – ethics code violations committed by senior-level managers.

Also, unlike in this case, there was no allegation that CBS promoted an executive violating the company's ethics code, or that CBS – as opposed to the executive who engaged in the wrongdoing – retaliated against employees who reported the executive's misconduct. Accordingly, in *CBS*, plaintiffs' claim was essentially based on the premise that ethics-related statements can be actionable merely because violations of the ethics code occurred.  In contrast, Plaintiffs here contend that Defendants' ethics-related statements are materially misleading

---

[4]    Empirically, a company's reputation and ethics are considered material information by investors, a fact ignored by the Recommendation.  "For each dollar that a firm misleadingly inflates its market value, on average, it loses this dollar when its misconduct is revealed, ***plus an additional $3.08. Of this additional loss, $0.36 is due to expected legal penalties and $2.71 is due to lost reputation***."  *See* Marc I. Gross, *Reputation and Securities Fraud Litigation*, 47 No. 2 Securities Regulation Law Journal 99, 104 (Summer 2019) (*quoting* Jonathan M. Karpoff, D. Scott Lee & Gerald S. Martin, *The Cost to Firms of Cooking the Books*, 43 J. Fin. & Quantitative Analysis 581, 581 (2008)).

because Teladoc's trivial punishment of CFO Hirschhorn – while promoting him to COO and firing whistleblowers – demonstrated that Defendants would not meaningfully enforce the Company's ethics code.

Additionally, although the court in *CBS* held that the statements there were not actionable, it also recognized that in certain circumstances it is "conceivable that a statement in a code of conduct could be factual and material" to support an Exchange Act claim. *CBS*, 2020 WL 248729, at *7-8. The court stated that such examples include "a company wielding its code of conduct to reassure investors that nothing was amiss when faced with suspicions of internal malfeasance; statements that were detailed and sufficiently concrete that a reasonable investor could rely upon them; and statements that were so anathema to the alleged internal wrongdoing that, even if general or aspirational, they were materially false." *Id*. at 7 (*citing Banco Bradesco*, 277 F. Supp. 3d at 656-61 (holding that statements regarding the company's code of ethical conduct were actionable because "they were made in an effort to reassure the investing public about the Company's integrity"); *Petrobras*, 116 F. Supp. 3d at 381 (holding that statements that a company was "aimed at assuring the highest ethical standards" and that the company undertook to "conduct its business with transparency and integrity" were actionable because they "were made repeatedly in an effort to reassure the investing public about the Company's integrity")). The court in *CBS* concluded, therefore, that "it is not the case that all statements in a code of conduct are categorically immaterial puffery." *CBS*, 2020 WL 248729, at *7; *see also Richman v. Goldman Sachs Grp., Inc*., 868 F. Supp. 2d 261, 277-80 (S.D.N.Y. 2012) (holding actionable statements that "[w]e are dedicated to complying fully with the letter and spirit of the laws, rules and ethical principles that govern us" and "[i]ntegrity and honesty are at the heart of our business").

Plaintiffs plead precisely such a circumstance in this case, and the context in which Defendants made their representations here renders them actionable. Plaintiffs' claims are not premised solely upon Defendant Hirschhorn's violations of Teladoc's ethics code over a period of years, but rather upon the Company's undisclosed decision to respond to these violations by promoting him, chiding him inconsequentially, and punishing the whistleblowers. ¶¶42-45. Accordingly, because Teladoc wielded "its code of conduct to reassure investors that nothing was amiss when faced with suspicions of internal malfeasance" and since Defendants' statements "were so anathema to the alleged internal wrongdoing" that "they were materially false," Defendants statements are actionable. *CBS*, 2020 WL 248729, at *7-8.

The same reasoning holds true regarding *Papa John's*. Like in *CBS*, plaintiffs in *Papa John's* did not allege that the company failed to investigate or appropriately punish ethics code violations committed by senior-level managers, nor did they allege that the company failed to adequately enforce its ethics code while retaliating against whistleblowers. Indeed, the court in *Papa John's* – like the court in *CBS* – recognized that in certain circumstances, courts have allowed claims based on alleged misrepresentations contained in a code of ethics or conduct to survive a motion to dismiss. *Papa John's*, 2020 WL 1243808, at *6. Specifically, the court in *Papa John's* cited *Signet Jewelers* in which Judge McMahon found "unavailing Defendants' argument that the representations contained in Signet's Code of Conduct and Code of Ethics concerning their policy and procedures against sexual harassment do not state a claim under Section 10(b)" because "statements contained in a code of conduct are actionable where they are directly at odds with the conduct alleged in a complaint." *Id*. at *17; *Papa John's*, 2020 WL 1243808, at *6.

This is exactly the case here, where Teladoc responded to CFO Hirschhorn's ethics code violations by promoting him and punishing the whistleblowers.  ¶¶42-45.  Additionally, many of the statements in *Papa John's* – such as "[w]e consider our team member relations to be good," "[t]he culture of Papa John's, really, is one that attracts really quality people," and "[o]ur most important ingredient is our people" are far more generalized than the statements at issue here. *Papa John's*, 2020 WL 1243808, at *8.[5]

Finally, the Recommendation merely adopted Defendants' suggestion that because Plaintiffs purportedly have not alleged that Defendant Hirschhorn is mentioned by name in the challenged risk disclosures, that *Papa John's* holding that statements about the importance of an executive "were not misleading for having omitted unadjudicated allegations that might one day lead to his ouster" applies here.  Recommendation at 25-26.  The Recommendation, however, mischaracterizes the relevant inquiry and further fails to engage in a "comparative assessment of plausible inferences, while constantly assuming the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27.  The inquiry is not simply about Defendant Hirschhorn's importance, it is about whether Defendants' representations regarding Defendant Hirschhorn "would have been viewed by the reasonable investor as having significantly altered the total mix of information available."  *Papa John's*, 2020 WL 1243808, at *6 (*quoting Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, (1988)).  Such is the case here, where Defendant

---

[5]     The Recommendation also improperly adopts Defendants' version of certain factual disputes at the pleading stage. *See, e.g.*, Recommendation at 22.  The Court, therefore, overlooks the fact that courts must engage in "comparative assessment of plausible inferences, while constantly assuming the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27.  For example, the Recommendation credits the investigation purportedly conducted by the Company although there are virtually no facts currently in the record about the investigation, and the adequacy of the investigation and the seriousness of Hirschhorn's punishment are questions of fact that should not be resolved on a motion to dismiss.  Regardless, a non-culpable inference flies in the face of the well-pleaded allegations in the Complaint showing fraudulent intent, including the superficiality of Hirschhorn's so-called punishment at the same time he was elevated to COO, the concealment of Hirshhorn's misconduct from investors, the harassment and firing of whistleblowers, and CEO Gorevic's post-Class Period statements *falsely* denying that senior management was aware of the misconduct when Hirschhorn was promoted and that the Vice President whistleblower was fired.

Gorevic falsely informed several analyst firms covering the Company – including Credit Suisse and Leerink – that Teladoc was not aware of Defendant Hirschhorn's affair at the time of his promotion to COO (¶¶8, 54), and where the Company's stock price plummeted 6.69% when Defendants revealed the Company's and Defendant Hirschhorn's conduct and the falsity of their statements.   ¶82.   Accordingly, Plaintiffs respectfully object to the Recommendation's conclusion that Plaintiffs have not adequately alleged falsity under the Exchange Act.[6]

## VI.   THE RECOMMENDATION SHOULD HAVE GRANTED LEAVE TO AMEND

Alternatively, Plaintiffs also respectfully suggest that the Recommendation should have granted leave to amend.  The Second Circuit has consistently acknowledged that "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend."  *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017); *see also ATSI Comm'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)."); *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) (same).

Although the Recommendation correctly recognized that the court in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) agreed that "[d]enial of leave [to amend] ***might*** be proper" where "the request gives no clue as to how the complaint's defects would be cured," the court in *Loreley* nevertheless held that "the district court exceeded the bounds of its discretion in denying Plaintiffs leave to amend their complaint" despite "the informality of the request, which was raised in the alternative at the end of Plaintiffs' brief opposing the motion to dismiss."  *Id*. at 189-90; *see also Ulbricht v. Ternium S.A.*, No.

---

[6]     The Recommendation held that since the Court found that Plaintiffs had not sufficiently alleged falsity under Section 10(b) of the Exchange Act, Plaintiffs did not adequately allege a primary violation upon which to base their claims under Section 20(a) of the Exchange Act.  Recommendation at 26.  Because Plaintiffs contend that the Court incorrectly held that Plaintiffs did not adequately allege falsity under Section 10(b), Plaintiffs respectfully assert that the Court's ruling with respect to Plaintiffs' Section 20(a) claim was also incorrect.

18CV6801PKCRLM, 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020) (granting leave to amend requested "in a cursory [sentence] at the end of [plaintiffs'] response brief"); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019) (same).  "Notably, even where Plaintiffs have not specified how they would amend their pleading if granted leave to do so, the Second Circuit has admonished district courts that complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend."  *Ulbricht*, 2020 WL 5517313, at *12; *Schiro*, 396 F. Supp. 3d at 309.

Additionally, although the Recommendation noted that Plaintiffs have "already twice amended their pleading" (Recommendation at 27), Plaintiffs amended the operative Complaint with Defendants' consent.  Doc. 33.  Thus, "Plaintiffs have not yet had an opportunity to amend their complaint in response to a court order pointing out the deficiencies in their pleading."  *Ulbricht*, 2020 WL 5517313, at *12; *Schiro*, 396 F. Supp. 3d at 309.   Importantly, in *ATSI*, plaintiffs had *five* opportunities to address the court's substantive guidance.  493 F.3d at 108.   Here, the Recommendation would deny Plaintiffs even one opportunity to amend to address the Court's guidance.  Thus, the Recommendation should have granted leave to amend.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully object to the Recommendation.

Dated:  September 18, 2020

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Ex Kano S. Sams II*
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150
esams@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com

Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, Pennsylvania 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
lheifetz@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
cdavid@pomlaw.com

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Lead Plaintiffs Wayne Arcuri,*
*Badruddin Salimbhai, and David Williams*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On September 18, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 18, 2020.


*s/ Ex Kano S. Sams II*_____
Ex Kano S. Sams II