**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JON REINER, Individually and on Behalf of All
  Others Similarly Situated,

                              Plaintiff,


              - v. -

TELADOC HEALTH, INC., JASON GOREVIC,
  and MARK HIRSCHHORN,

                              Defendants.

---

Case No. 1:18-cv-11603-GHW-BCM

**ORAL ARGUMENT REQUESTED**


**DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' OBJECTION TO
THE REPORT AND RECOMMENDATION TO THE HON. GREGORY H. WOODS**


PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990

*Attorneys for Teladoc Health, Inc.,
Jason Gorevic, and Mark Hirschhorn*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................7

I.      STANDARD OF REVIEW ...........................................................................................7

II.     THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' CLAIMS ............................................................................................8

      A.     Plaintiffs' Objection Mischaracterizes and Is Contradicted by the Allegations in the SAC ...............................................................................9

      B.     Judge Moses Correctly Concluded that Plaintiffs Failed to Allege Any Material Misstatement or Omission .................................................11

            1.     Statements Regarding the CBCE Were Not Materially False or Misleading ...............................................................................11

            2.     Statements Regarding Key Personnel Were Not Materially False or Misleading .........................................................................21

      C.     Plaintiffs' Claims Also Fail Because Plaintiffs Fail to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter ...............................22

III.    THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DENYING PLAINTIFFS LEAVE TO AMEND .................................................................23

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Argenti* v. *Saul*,
    2020 WL 1503171 (S.D.N.Y. Mar. 30, 2020) ............................................................7

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)...................................................................18

*BankUnited, N.A.* v. *Merritt Envt'l Consulting Corp.*,
    360 F. Supp. 3d 172 (S.D.N.Y. 2018)...................................................................24

*Barrett* v. *PJT Partners*,
    2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)...........................................12, 13, 21

*Bellikov* v. *Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007)..................................................................................24

*In re Braskem S.A. Sec. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017)..............................................................13, 21

*Catala* v. *Joombas Co. Ltd.*,
    2019 WL 4803990 (S.D.N.Y. Sept. 23, 2019)........................................................5

*City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)......................................................12

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..................................................................................11

*Constr. Laborers Pension Tr. for S. Cal.* v. *CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020)......................................................... passim

*Fadem* v. *Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005)...................................................................5

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ................................................23, 25

*Fogel* v. *Vega*,
    759 F. App'x 18 (2d Cir. 2018) ............................................................................17

*Hayden* v. *County of Nassau*,
    180 F.3d 42 (2d Cir. 1999)...............................................................................24, 25

*Hollaway* v. *Colvin*,
    2016 WL 1275658 (S.D.N.Y. Mar. 31, 2016) .......................................................8

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007).........................................................................18

*Kamanou* v. *Exec. Sec'y Comm'n Econ. Cmt'y W. Afr. States*,
    2012 WL 868700 (S.D.N.Y. Mar. 14, 2012) .................................................................6

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998)...........................................................................6

*Krys* v. *Pigott*,
    749 F.3d 117 (2d Cir. 2014)........................................................................................23

*In re Liberty Tax, Inc. Sec. Litig.*,
    2020 WL 5807566 (2d Cir. Sept. 30, 2020) ...............................................13, 16, 21, 24

*Lopez* v. *CTPartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)......................................................................11, 13, 16

*Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*,
    797 F.3d 160 (2d Cir. 2015).......................................................................................25

*Morgan Art Found. Ltd.* v. *McKenzie*,
    2019 WL 2725625 (S.D.N.Y. July 1, 2019) ...............................................................24

*In re OCA Interpreters Litig.*,
    2013 WL 5312506 (S.D.N.Y. Sept. 10, 2013)...........................................................8

*Oklahoma Law Enf't Ret. Sys.* v. *Papa John's Int'l, Inc.*,
    444 F. Supp. 3d 550 (S.D.N.Y. 2020)......................................................12, 13, 15, 22

*Paulsen* v. *Stifel, Nicolaus & Co.*,
    2019 WL 2415213 (S.D.N.Y. June 4, 2019) ...............................................................2

*Pioneer Navigation Ltd.* v. *Chem. Equip. Labs, Inc.*,
    2020 WL 1031082 (S.D.N.Y. Mar. 3, 2020 .................................................................8

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard
    Co.*,
    845 F.3d 1268 (9th Cir. 2017) ....................................................................................12

*Rothman* v. *Gregor*,
    220 F.3d 81 (2d Cir. 2000)..........................................................................................2

*Schiro* v. *Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)...................................................................15, 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)........................................................18, 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
    389 F. Supp. 3d 221 (S.D.N.Y. 2019) ...................................................................19

*Singh* v. *Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ....................................................................8, 12, 13

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ........................................................13

*Ulbricht* v. *Ternium S.A.*,
    2020 WL 5517313 ...............................................................................24

*Wharton* v. *Berryhill*,
    2019 WL 1410745 (S.D.N.Y. Mar. 28, 2019) ...........................................................7

## STATUTES

15 U.S.C. § 78u–4(b)(1) ..........................................................................9

28 U.S.C. § 636(b)(1)(A) .........................................................................7

Fed. R. Civ. P. 72(b)(3) ..........................................................................7

Fed. R. Civ. P. 9(b) ........................................................................5, 8, 18

Defendants Teladoc Health, Inc. ("Teladoc" or the "Company"), Jason Gorevic, and Mark Hirschhorn respectfully submit this response to Plaintiffs' objection (the "Objection") to Magistrate Judge Barbara Moses's September 4, 2020 Report and Recommendation (the "R&R"), recommending that the Court grant Defendants' motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (the "SAC") without leave to amend.

## PRELIMINARY STATEMENT

In a well-reasoned, 27-page R&R fully supported by applicable authorities, Judge Moses concluded that the SAC fails as a matter of law to plead that Defendants made materially false statements.  Plaintiffs' Objection does not demonstrate that Judge Moses erred in any way. Moreover, as Judge Moses recommended, leave to amend is properly denied because Plaintiffs— who already amended twice—fail to explain how they would amend to rectify their pleading.

This putative securities class action is premised on the theory that a public company engages in securities fraud when, unknown to shareholders, a single executive violates the company's disclosed ethical standards and code of conduct by engaging in a consensual relationship with an indirect subordinate.  This is not, and cannot be, the law.  But Plaintiffs argue that the nondisclosure of Hirschhorn's inappropriate workplace relationship—publicized by a short-seller report years after Hirschhorn was disciplined and the relationship discontinued— somehow rendered false and misleading certain aspirational statements that Teladoc made concerning its general ethics policies and Code of Business Conduct and Ethics ("CBCE") and the importance of its senior management team.

Judge Moses determined, based on a faithful application of relevant case law, that Plaintiffs failed to state a claim for securities fraud.  *First*, as to the Company's statements about its ethical standards and the CBCE, Judge Moses held that such statements are not actionable

because they are aspirational in nature (and thus do not invite reasonable reliance); were not issued in a context in which the Company was seeking to assure investors during a time of concern; were not "directly at odds with" the alleged misconduct; and a single instance of alleged misconduct by a single executive does not constitute the sort of pervasive wrongdoing present in other cases on which Plaintiffs rely. *Second*, as to the Company's disclosures on the importance of senior executives, Judge Moses held that those generic statements lacked a sufficient connection to the alleged misconduct and did not give rise to a duty to disclose unadjudicated wrongdoing.

Plaintiffs' Objection identifies no flaw in Judge Moses's conclusions. Nor could it. As numerous courts have held, including in recent cases asserting claims based on virtually identical statements, the types of statements Plaintiffs rely on here are too generic and aspirational to constitute securities fraud, other than in rare circumstances not present here. Nor have Plaintiffs put forth any cogent reason that they should be granted yet another opportunity to amend their claims. In sum, Judge Moses's R&R is correct in all respects and should be adopted in its entirety.

## BACKGROUND[1]

Teladoc is a virtual healthcare provider founded in 2002 and headquartered in Purchase, New York. (SAC ¶¶ 2, 25.) Gorevic is Teladoc's CEO, and Hirschhorn is its former CFO and COO. (*Id.* ¶¶ 3, 21.)

**Hirschhorn's Relationship with an Indirect Subordinate.** As alleged in the SAC (based heavily on the December 5, 2018 SIRF article attached thereto (the "SIRF Report")), prior to late 2016, Hirschhorn engaged in an inappropriate, 2.5-year personal relationship with an

---

[1] The facts outlined herein are accepted as true solely for purposes of Defendants' motion to dismiss. The relevant facts are drawn from the SAC and from other sources that the Court is permitted to review. To the extent that the SAC quotes, cites, or references a document, that document is considered part of the SAC. *See Rothman* v. *Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000). Similarly, a court can take judicial notice of SEC filings on a motion to dismiss. *See Paulsen* v. *Stifel, Nicolaus & Co.*, 2019 WL 2415213, at *3 (S.D.N.Y. June 4, 2019).

indirect subordinate, Charece Griffin.  (*Id.* ¶¶ 4, 28, 31; *id.*, Ex. A.)  Plaintiffs do not allege that the relationship was nonconsensual, nor are there any allegations of sexual harassment or other impropriety.   Further, Plaintiffs do not allege any instances of sexual harassment, sexual misconduct, or inappropriate workplace relationships involving any other Teladoc employees. Citing the SIRF Report, Plaintiffs allege that Hirschhorn caused Griffin "to receive promotions for which she was unqualified" (*e.g.*, *id.* ¶¶ 12, 59), but the SIRF Report acknowledges that "several of [Griffin's] former colleagues spoke highly of her motivation and personality" (*id.*, Ex. A ("SIRF Report") at 1).  Plaintiffs also allege that Hirschhorn gave Griffin advice about when to buy and sell Teladoc stock (*id.* ¶¶ 5, 33), suggesting this was "***potentially*** illegal insider trading" (*id.* ¶ 28 (emphasis added)), but Plaintiffs do not identify any specific stock transactions or allege that the advice was based on material non-public information.

**Hirschhorn's Promotion to COO.**  On September 28, 2016, Hirschhorn, already CFO, was also given the title of COO.  (*Id.* ¶ 8.)  Plaintiffs assert that "it is ***highly unlikely*** that [Teladoc's] senior management was ignorant" of Hirschhorn's misconduct at the time of his promotion (*id.* ¶ 55 (emphasis added)), but offer no facts supporting that speculation, which, in any event, is contradicted by their own timeline.[2]

**The Company's Investigation and Discipline of Mr. Hirschhorn.**  The SAC alleges that the Hirschhorn-Griffin relationship was first reported to Teladoc's Legal and Human

---

[2] In a side-show that is largely irrelevant to the motion, Plaintiffs argue that Teladoc senior management must have known about the Hirschhorn-Griffin relationship before Hirschhorn was given the COO title on September 28, 2016. The basis for this argument is that, in late October, two Teladoc employees filed police reports regarding harassing emails sent as early as October 2, 2016, which Plaintiffs allege were "***apparently*** related to [the employees'] awareness of Hirschhorn's affair with Griffin" (in fact, the reports say nothing about the affair (*see* Defs.' Br. 6 n.3)) and were received "soon after" McKay reported the relationship to HR.  (*Id.* ¶¶ 7, 8, 37–40; *id.*, Exs. B-C (emphasis added).)  Not only do these allegations fail to show that any senior executive at Teladoc was aware of the Hirschhorn-Griffin relationship in September before Hirschhorn was given the COO title, but they have little bearing, if any, on the legal issues addressed in the R&R, which dismissed Plaintiffs' claims because the alleged misstatements are immaterial, inactionable statements of aspiration.

Resources departments by Amy McKay—Griffin's boss—in October 2016.  (*Id.* ¶¶ 6, 35; *accord* SIRF Report at 2.)  As Plaintiffs concede, after learning of the alleged relationship, the Company retained an outside law firm to investigate, and the investigators determined Mr. Hirschhorn had engaged in inappropriate conduct.  (SAC ¶¶ 9, 42.)  As Plaintiffs also concede, Teladoc promptly disciplined Hirschhorn in response.  (*Id.* ¶ 43.)  As admitted in the SAC, on December 27, 2016, Teladoc entered into an amended employment contract with Hirschhorn that (i) suspended, for one year, the vesting of any equity awards and (ii) prohibited him from violating the employee handbook.  (*Id.* ¶¶ 10, 43.)  Plaintiffs' allegations, however, neglect to mention that Hirschhorn's employment contract also was amended to provide that his annual bonus was conditioned on his "not having materially violated any published employee policy of the Company," and Hirschhorn was not awarded *any* annual bonus for 2016.[3]

Plaintiffs do not allege that Hirschhorn ever again violated Company policy after he was disciplined in December 2016.

**SIRF Report and Stock Drop.**  On December 5, 2018, nearly two years after the Company had disciplined Hirschhorn, SIRF published an article detailing the years-old, long-ago-ended relationship between Hirschhorn and Griffin.  (SAC ¶¶ 13, 28; SIRF Report.)  On December 6, 2018, the day after publication, Teladoc's stock price fell 6.69%.  (SAC ¶ 82.)

**The Challenged Statements.**  *First*, Plaintiffs challenge public disclosures and statements about Teladoc's ethics and insider trading policies, its adopted Code of Business Conduct and Ethics ("CBCE") in Teladoc's 2016, 2017, and 2018 proxy statements, as well as statements from the CBCE itself.  (SAC ¶¶ 60–66, 70–72, 76–79.)  These challenged disclosures

---

[3]  (Soloway Decl. Ex. 1 (12/30/16 Form 8-K) at 5; Soloway Decl. Ex. 3 (4/6/17 Proxy Statement) at 8-10.)  By comparison, his annual bonus for 2015 was $300,495, and his annual bonus for 2017 was $203,704.  (Soloway Decl. Ex. 3 at 8–0; Soloway Decl. Ex. 4 (4/20/18 Proxy Statement) at 7.)

include, for instance, the statements that (i) Teladoc "is committed to the highest standards of integrity and ethics in the way it conducts business" (*id.* ¶ 60 (emphasis removed)); (ii) Teladoc is committed "to promote honest and ethical conduct for conducting the business of the Company consistent with the highest standards of business ethics" (*id.* ¶ 70); and (iii) Teladoc "has also adopted a [CBCE] that applies to all directors, officers and employees" (*id.* ¶ 71; *see also id.* ¶¶ 63–66 (quoting CBCE §§ 1, 3, 5, 12)).

*Second*, Plaintiffs challenge certain key personnel disclosures in Teladoc's 2015, 2016, and 2017 Annual Reports, including that the Company "depend[s] on [its] senior management team, and the loss of one or more of our executive officers or key employees or an inability to attract and retain highly skilled employees could adversely affect our business." (*Id.* ¶ 57 (emphasis removed); *see also, e.g.*, *id.* ¶¶ 58, 73–75.)

*Finally*, Plaintiffs rely on alleged misstatements from the CBCE not identified in the SAC, namely:

- "The Code will be strictly enforced throughout the Company and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action such as dismissal or removal from office." (Obj. 5, 9 (quoting SAC Ex. D at 4–5).)

- "The Company will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith." (*Id.*)

These statements from the CBCE were not specified as fraudulent—or referenced at all—in the SAC itself, as required under Rule 9(b) (*see* SAC ¶¶ 57–80), and thus Plaintiffs' reliance on these statements below was an improper attempt to amend their deficient pleadings. *See Fadem* v. *Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005); *Catala* v. *Joombas Co. Ltd.*, 2019 WL 4803990, at *14 n.14 (S.D.N.Y. Sept. 23, 2019).[4]

---

[4] Plaintiffs also cite Gorevic's post-class period statements to analyst firms "that: (i) Teladoc was not aware of Hirschhorn's improper relationship with a subordinate at the time of his promotion to COO; and (ii) McKay was not terminated for reporting the relationship and left voluntarily because she did not want to relocate to Boston

**Procedural History and R&R.**  Plaintiffs filed this lawsuit on December 12, 2018. (ECF No. 1.)  Following appointment as lead plaintiffs, Plaintiffs filed an Amended Complaint on May 20, 2019.  (ECF No. 29.)  Plaintiffs filed the SAC on June 26, 2019.  (ECF No. 35.)

On July 16, 2019, Defendants submitted a pre-motion letter to this Court setting out their arguments in support of their anticipated motion to dismiss.  (ECF No. 37.)  Plaintiffs responded on July 23, and this Court held a pre-motion conference on July 30.  (*See* ECF Nos. 40–42.)  On September 13, the Court referred this action to Judge Moses for general pretrial management, including a report and recommendation on dispositive motions, and Defendants filed their motion to dismiss that day.  (*See* ECF Nos. 45–49).  Briefing was completed on November 27 (ECF No. 50, 53), and letters describing supplemental authorities were submitted thereafter (ECF Nos. 54–55, 58–59, 61).  Judge Moses held oral argument on Defendants' motion on May 15, 2020.  (ECF No. 63.)

Judge Moses issued the R&R on September 4, 2020.  (ECF No. 65.)  Judge Moses found that Plaintiffs' SAC primarily rested on the allegation that Defendants' nondisclosure of the Hirschhorn-Griffin relationship rendered materially false or misleading Teladoc's (1) statements in or about the CBCE or corporate governance, and (2) key personnel risk disclosures.  (R&R 17.)  Judge Moses rejected Plaintiffs' attempt to argue that the Company failed to enforce the CBCE against Hirschhorn and retaliated against employees, finding such arguments unsupported by

---

following a restructuring."   (SAC ¶ 54.)   Although Plaintiffs insinuate that these statements were materially misleading (*see, e.g.*, Obj. 20–21 & n.5), such post-class period statements are "immaterial as a matter of law because [they] could not have reached investors until after the class period closed."  *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 412 (S.D.N.Y. 1998).  In any event, Plaintiffs do not plead factual allegations showing that these statements were false, *see infra*, at 10–11, much less that Gorevic knowingly lied.  Plaintiffs also had previously asserted another alleged misstatement concerning the Company's commitment to corporate governance (SAC ¶ 68), Plaintiffs made no argument concerning this alleged misstatement in either their Opposition or their Objection, and have thus abandoned it.  *Kamanou* v. *Exec. Sec'y Comm'n Econ. Cmt'y W. Afr. States*, 2012 WL 868700, at *3 (S.D.N.Y. Mar. 14, 2012) (finding that a plaintiff's failure to respond to a defendant's argument regarding a claim "constitutes abandonment of th[e] claim[]").

anything other than conclusory allegations, and indeed contradicted by Plaintiffs' own allegations. (*Id.* at 22–23.)   Judge Moses further concluded that Plaintiffs failed to allege any material misstatement or omission.   In particular, Judge Moses reasoned:

- The statements concerning the CBCE were prototypical aspirational statements on which a reasonable investor could not have relied.  (R&R 17–19.)

- None of the "rare circumstances" in which other courts have found code of conduct statements actionable were present here, because (a) none of the statements were made in the context of reassuring investors that nothing was amiss, (b) the alleged misconduct here was not "directly at odds with" the prohibitions in the CBCE, (c) and a single instance of alleged misconduct by a single executive does not constitute the "widespread" or "pervasive" misconduct or willful corporate blindness present in these other cases.  (R&R 19–24.)

- The key personnel risk disclosures were not misleading because general statements that executives are important to the company do not create a duty to reveal unadjudicated allegations that might one day lead to a particular executive's departure. (R&R 24–26.)

Accordingly, Judge Moses recommended that Plaintiffs' SAC be dismissed.  Because Plaintiffs failed to explain how they might cure these deficiencies, including upon questioning during oral argument, Judge Moses concluded that leave to amend a third time would be futile.  (R&R 27.)

## **ARGUMENT**

## I.   **STANDARD OF REVIEW**

This Court reviews *de novo* "any part of the magistrate judge's disposition that has been *properly* objected to."   Fed. R. Civ. P. 72(b)(3) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A).   An objection is only proper to the extent it is "specific and clearly aimed at particular findings in the magistrate judge's proposal."   *Argenti* v. *Saul*, 2020 WL 1503171, at *2 (S.D.N.Y. Mar. 30, 2020) (internal quotation marks and citation omitted).   Thus, "to the extent that a party makes only conclusory objections, or simply reiterates a previous argument before the magistrate, the Court reviews the Report strictly for clear error."   *Wharton* v. *Berryhill*, 2019 WL 1410745, at *1 (S.D.N.Y. Mar. 28, 2019).   A *de novo* standard of review is inappropriate in these

circumstances because such a standard "would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Pioneer Navigation Ltd.* v. *Chem. Equip. Labs, Inc.*, 2020 WL 1031082, at *3 (S.D.N.Y. Mar. 3, 2020) (Woods, J.).

Here, Plaintiffs' Objection simply rehashes the same arguments Plaintiffs advanced below. In fact, the bulk of Plaintiffs' arguments are copied verbatim from Plaintiffs' Opposition and Joint Supplemental Letter to Judge Moses—with the simple addition of a predicate, such as "the Recommendation failed to recognize." (*Compare, e.g.*, Obj. 17–21, *with* May 5, 2020 Joint Ltr. 4–6, ECF No. 61; Obj. 8–12, *with* Opp'n 10–14.) Therefore, the clear error standard is warranted. *See, e.g.*, *In re OCA Interpreters Litig.*, 2013 WL 5312506, at *3 (S.D.N.Y. Sept. 10, 2013) (applying clear error standard where objection "raise[d] the same arguments and cite[d] the same authority"), *aff'd*, 582 F. App'x 47 (2d Cir. 2014); *Hollaway* v. *Colvin*, 2016 WL 1275658, at *2 (S.D.N.Y. Mar. 31, 2016) (applying clear error standard where objection "repeat[ed] verbatim the arguments that Plaintiff made in original brief" (internal quotation marks and citation omitted)). Regardless of which standard applies, however, Plaintiffs' Objection is unavailing.

## II.   THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' CLAIMS

To state a claim for a violation of Section 10(b) and Rule 10b-5(b), Plaintiffs must allege, *inter alia,* a material misrepresentation or omission by the defendant that was made with scienter. *Singh* v. *Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). As to each element, Plaintiffs must also meet the heightened pleading standards of Rule 9(b) and the PSLRA by: (1) "specify[ing] each statement alleged to have been misleading"; (2) identifying "the reason or reasons why the statement is misleading"; and (3) "stat[ing] with particularity all facts on which

that belief is formed."  15 U.S.C. § 78u–4(b)(1).[5]

For the reasons that follow, Defendants' nondisclosure of the Hirschhorn-Griffin relationship did not render any of the challenged statements materially false or misleading, and Plaintiffs' repeated assertion that the Company failed to enforce its policies is patently undermined by Plaintiffs' own allegations in the SAC and the documents incorporated therein.

## A.    Plaintiffs' Objection Mischaracterizes and Is Contradicted by the Allegations in the SAC

As a threshold issue, while Plaintiffs complain that the R&R ignores relevant "context" (Obj. 10), it is Plaintiffs' Objection that repeatedly mischaracterizes Plaintiffs' own allegations in the SAC and the documents incorporated by reference.  In particular, Plaintiffs argue that their claims "are not premised *solely* upon CFO Hirschhorn's series of violations of the CBCE over a period of years," but instead on Teladoc's supposed decision to respond "by giving Hirschhorn a promotion (alongside a mere slap on the wrist), while more severely punishing the whistleblowers."  (*Id.* 11–12.)  Plaintiffs thus repeat three arguments throughout their brief:  that the Company (i) "failed to investigate" Hirschhorn's alleged misconduct and "fail[ed] to enforce" its ethics policies against Hirschhorn (*id.* 1, 17); (ii) promoted Hirschhorn after learning of his alleged misconduct (*id.* 6 n.2); and (iii) retaliated against whistleblowers (*id.* 4).  But as Judge Moses correctly observed, the allegations in the SAC do not support—and often affirmatively contradict—this theory of the case.  (R&R 22–23.)

*First*, Plaintiffs concede in the SAC that Teladoc *did enforce its policies*, including retaining an outside law firm to investigate and, in response to the investigation's findings,

---

[5]  Judge Moses also correctly concluded that because Plaintiffs' Section 10(b) and Rule 10b-5 claims fail, Plaintiffs do not allege a primary securities fraud violation and their Section 20(a) claim must also be dismissed.  (*See* R&R 26.)  Plaintiffs do not dispute the fact that if their Section 10(b) and Rule 10b-5 claim fails, their Section 20(a) claim also fails.  (*See* Obj. 21 n.6.)

disciplining Hirschhorn.  (SAC ¶¶ 9–10, 42–43.)  Plaintiffs criticize the adequacy of that discipline—which they mischaracterize by ignoring Hirschhorn's loss of his 2016 bonus (Obj. 4)[6]—but the SAC concedes that Hirschhorn was disciplined for allegedly violating the ethics policy.  Plaintiffs thus seek to "omit[] inconvenient facts."  (R&R 22.)

> *Second*, the SAC contradicts Plaintiffs' speculation that senior management knew about Hirschhorn's alleged misconduct before he became COO, which occurred on ***September 28, 2016***.  (SAC ¶ 8.)  The sole basis for Plaintiffs' conjecture is that an employee received a harassing email with no obvious connection to the Griffin-Hirschhorn relationship on ***October 2, 2016***.  (*See id.* ¶¶ 8, 55.)  The SAC thus does not allege that any member of senior management actually knew about Hirschhorn's alleged misconduct before September 28.  Plaintiffs' assertion also conflicts with their allegations that McKay did not report the alleged misconduct to management ***until October***.  (*Id.* ¶ 6.)  Although Defendants pointed out these inconsistencies below (*see, e.g.*, Defs.' Br. 5–7), Plaintiffs' continued speculation—contrary to the SAC and the SIRF Report on which it relies—that McKay "must" have reported the Hirschhorn-Griffin relationship "well before" October 2 (Obj. 6 n.2, 9) "gets events out of order"  (R&R 22).

> *Third*, Plaintiffs' arguments regarding Teladoc's supposed retaliation against "whistleblowers" are at best an afterthought in the SAC.  Only two paragraphs of the SAC address this issue, vaguely alleging that a confidential witness who reported the misconduct "experienced retaliation, in the form of bullying, and then was ultimately fired, by a manager who reported to Hirschhorn."  (SAC ¶ 45; *see also id.* ¶ 12).  The SAC provides no other details regarding purported retaliation, despite repeated references to "whistleblowers" in their brief below and in their

---

6   As explained above—and as shown by SEC filings of which the Court can take judicial notice—Hirschhorn's contract was amended to ***condition his annual bonus*** on him not violating any published employee policy, and he subsequently did not receive an annual bonus for 2016, *supra* at 4.  In other words, Hirschhorn's discipline included losing his 2016 annual bonus.

Objection.  (*E.g.*, Obj. 1–2, 9, 12, 18–19; Opp'n 1–3, 11, 13, 16, 18.)  And, while Plaintiffs insinuate throughout their Opposition that McKay's departure in October 2017—*a year later*—was retaliation for blowing the whistle on Hirschhorn, Plaintiffs did not allege supporting facts—as Defendants showed in their motion (Defs.' Br. 8 n.9).[7]

### B.   Judge Moses Correctly Concluded that Plaintiffs Failed to Allege Any Material Misstatement or Omission

As Judge Moses correctly found, Plaintiffs have failed to identify any materially false or misleading statements, whether concerning (1) the CBCE, or (2) key personnel.

#### 1.   Statements Regarding the CBCE Were Not Materially False or Misleading

The majority of the misstatements alleged by Plaintiffs are generalized, aspirational statements in or about the Company's ethics policies and the CBCE, including the Company's insider trading policies.  Violations of a code of conduct do not make the code of conduct, or general statements referencing it, false or misleading: such statements are not a representation that the policies will always be followed to the letter, or that they will be effective.  (Defs.' Br. 12–13 (citing cases).)  Moreover, it is black-letter law that "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning they are 'too general to cause a reasonable investor to rely upon them.'"  *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (citation omitted); *see also, e.g.*, *Lopez* v. *CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 30 (S.D.N.Y. 2016) (statements "about

---

[7]   Plaintiffs allege that one of their confidential witnesses was bullied and ultimately fired—"by a manager who reported to Hirschhorn"—as retaliation after reporting Mr. Hirschhorn's improper relationship, but they do not say when this occurred or provide any other details.  (SAC ¶ 45.)  Plaintiffs also allege that McKay was fired, a full year after reporting the relationship, in October 2017, "[a]fter spending months 'bitterly complaining and arguing with the HR and Legal departments over the [Mark Hirschhorn] decision.'"  (*Id.* ¶ 44 (citation omitted).)  Defendants dispute the allegation that McKay was fired, but even accepting it as true, Plaintiffs do not specifically allege that her departure from the Company had anything to do with Mr. Hirschhorn—who had been investigated and disciplined the prior year—or that it was otherwise improper.

[defendant's] culture, reputation, and compliance were made at a highly general level" and thus were "immaterial puffery"); *City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*, 2014 WL 4832321, at *15 (S.D.N.Y. Sept. 29, 2014) (collecting cases).   Because statements in a company's code of conduct are almost invariably "explicitly aspirational," *Barrett* v. *PJT Partners*, 2017 WL 3995606, at *5 (S.D.N.Y. Sept. 8, 2017), they are a "textbook example of 'puffery,'" *Singh.*, 918 F.3d at 63.   Thus, alleged misrepresentations in a company's code of ethics or conduct "survive a motion to dismiss only in rare circumstances." *Oklahoma Law Enf't Ret. Sys.* v. *Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 560 (S.D.N.Y. 2020); *see Constr. Laborers Pension Tr. for S. Cal.* v. *CBS Corp.*, 433 F. Supp. 3d 515, 532 (S.D.N.Y. 2020) (such statements actionable only "under the unique circumstances of the case," where they "could be viewed as material statements of fact").

As Judge Moses correctly found (R&R 18–23), there is nothing "unique" about the alleged misstatements here.   The statements at issue are all "transparently aspirational" and thus not actionable.  *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017).   The challenged CBCE language is littered with words of aspiration.   For example:

- "We must ***strive*** to foster a culture of honesty and accountability."  (SAC ¶ 63 (quoting CBCE § 1) (emphasis added).)

- "All such non-public information ***should*** be considered inside information and ***should*** never be used for personal gain."  (SAC ¶ 65 (quoting CBCE § 3) (emphasis added).)

- "Our policies are ***designed*** to ensure that employees are treated, and treat each other, fairly and with respect and dignity."  (SAC ¶ 66 (quoting CBCE § 12) (emphasis added).)

- "The purpose of this code is to promote honest and ethical conduct . . . . Our [CBCE] establishes our policies and ***expectations*** with respect to a wide range of business conduct." (SAC ¶ 71 (quoting 2017 Proxy Statement).)

These are the exact sort of "banal and vague corporate statements" that would not

have invited reasonable reliance by Teladoc investors, *Singh*, 918 F.3d at 60, and that courts routinely find aspirational and not actionable, *see, e.g.*, *In re Liberty Tax, Inc. Sec. Litig.*, 2020 WL 5807566, at *2–3 (2d Cir. Sept. 30, 2020) (in action alleging CEO's inappropriate romantic relationships with employees, statement that compliance task force was "very successful" in "taking appropriate action to ensure the [company's] standards are upheld" and making sure offenders "are exited from the [company]" was inactionable puffery); *PJT Partners*, 2017 WL 3995606, at *6 (code "*designed*" to ensure lawful conduct was aspirational "by [its] terms"); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 755 (S.D.N.Y. 2017) (use of the qualifier "should" indicates "explicitly aspirational" language); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *36 (S.D.N.Y. Sept. 28, 2012) (identifying "[defendant] strives" and "employees should" as "clearly" puffery); *Lopez*, 173 F. Supp. 3d at 26, 28–29 (statements that ethics code was adopted to "promote . . . honest and ethical conduct" and that company expected personnel "to act with the highest standards of honesty and ethical conduct" not actionable).

Two recent decisions in this District, decided in putative securities fraud class actions, confirm Judge Moses's conclusion that Plaintiffs have failed to plead any non-aspirational statements: *CBS*, 433 F. Supp. 3d 515, involving the alleged sexual misconduct of CBS's former Chairman and CEO Leslie Moonves; and *Papa John's Int'l*, 444 F. Supp. 3d 550, involving the alleged sexual harassment and misconduct by senior executives at Papa John's, including founder and former CEO John Schnatter.[8]  In both cases, as here, news outlets published stories about the alleged misconduct, the companies' stock prices dropped, and senior executives stepped down. 433 F. Supp. 3d at 526–29; 444 F. Supp. 3d at 556–57.

---

[8] As discussed further below, both cases also confirm Judge Moses's conclusion that Teladoc's risk disclosures were not materially misleading.

Pursuing a similar theory to Plaintiffs here, plaintiffs in both actions alleged that the failure to disclose the executive misconduct rendered statements from and about the companies' codes of conduct materially false and misleading.  433 F. Supp. 3d at 532–35; 444 F. Supp. 3d at 559–62.  Many of the challenged statements are substantively identical to the statements Plaintiffs emphasize here.  For example, the following statements alleged in *CBS*, 433 F. Supp. 3d at 533–34, are nearly identical to those Plaintiffs identify here:

| Dismissed Statements in *CBS* | Challenged Statements Here |
|---|---|
| "CBS has a ***'zero tolerance' policy*** for sexual harassment." *Id.* at 533. | "[C]onduct involving discrimination or harassment of others ***will not be tolerated***." (SAC ¶ 66 (emphasis added).) |
| "[CBS] ***will not tolerate retaliation*** against any person who makes a good faith report of misconduct[.]" *Id.* (emphasis added). | "The Company ***will not tolerate any kind of retaliation*** for reports or complaints regarding misconduct that were made in good faith." (Obj. 9 (quoting CBCE) (emphasis added).) |
| "[W]e are ***committed to maintaining the highest standards*** in everything we do"; "we all have a responsibility to uphold the highest standards of ethical and appropriate business actions." *Id.* (emphasis added). | "Teladoc is ***committed to the highest standards*** of integrity and ethics in the way it conducts business."  (SAC ¶ 60 (emphasis added).) |
| "[The Ethics Code addresses] a general obligation to ***promote honest and ethical conduct*** within the Company." *Id.* at 534. | "[Teladoc is committed] to ***promote honest and ethical conduct*** . . . ."  (SAC ¶ 70 (emphasis added).) |
| CBS's BCS "sets forth the Company's ***standards*** for ethical conduct." *Id.* | "Our [CBCE] establishes our ***policies and expectations*** with respect to a wide range of business conduct . . . ." (SAC ¶ 71 (emphasis added).) |

As the *CBS* court explained, such statements are "far too general and aspirational to invite reasonable reliance."  455 F. Supp. 3d at 533 (statements failed to "describe concrete steps taken by the Company to ensure compliance with internal policy or the law").  The *Papa John's* court—citing *CBS*—reasoned similarly, concluding "no reasonable investor could have

14

relied on the [c]ode's standard and vague assurances in making investment decisions." 444 F.

Supp. 3d at 561. Both decisions are directly on point here.[9] Judge Moses thus correctly applied

the relevant legal authorities in concluding that Plaintiffs' challenged statements were not

actionable as a matter of law.

Plaintiffs attempt to distinguish the manifest weight of these authorities by arguing

that this is one of the "unique circumstances" where either (a) the Company's statements in or

about the CBCE were so "detailed and sufficiently concrete" that they were not aspirational, or (b)

even if such statements were aspirational, there was such antithetical or pervasive misconduct to

establish the Company did not hold these aspirations, *CBS*, 433 F. Supp. 3d at 532 (noting these

"rare" and "unique" circumstances). (Obj. 12–20.) Plaintiffs miss the mark:

### (a)   Plaintiffs Fail to Identify Any Non-Aspirational Statements

Plaintiffs emphasize two alleged misstatements they contend are non-aspirational:

(1) a statement that the CBCE "applied to all directors, officers, and employees," including the

most senior corporate officers (Obj. 12 (citing SAC ¶¶ 61, 71, 77)), and (2) a statement in the

CBCE that the Company will not tolerate retaliation against whistleblowers. (*Id.* at 13–14.) But

the "distinguishing feature of puffery is its use of broad generalities, not its use of talismanic

aspirational language." *Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 298 n.5 (S.D.N.Y.

2019).[10] And if Plaintiffs' two identified statements *were* interpreted—contrary to their plain

---

[9] Plaintiffs make a calculated attempt to distinguish *CBS* and *Papa John's* by arguing that those plaintiffs did not allege "as Plaintiffs do here, that [the companies] knew about – but failed to investigate or appropriately punish – ethics code violations committed by senior-level managers," that the companies "promoted an executive violating the company's ethics code," or that the companies "retaliated against employees." (Obj. 17, 19.) But as discussed *supra*, at 9–11, Plaintiffs' attempted distinctions are based on the pleading they wish they had (and allegations they wish they could make), not on the one they have.

[10] Plaintiffs make much ado about a line of questioning during oral argument, arguing that Judge Moses thereby "acknowledged it was plausible for Plaintiffs to assert that Defendants' representations were 'a little more than aspirational,'" and thus that Judge Moses's subsequent R&R was improper. (Obj. 13–14.) But Judge Moses simply was asking a question during argument, namely, "could an argument be made here that this case fits into [that situation]"? (*Id.* (quoting Tr. at 14:12–15:7).)

language and context—as non-aspirational statements of fact, Judge Moses correctly recognized that Plaintiffs have failed adequately to allege that these statements were false or misleading in the first place.  (*See* R&R 22.)

As to the first purportedly non-aspirational statement—that the CBCE applied to all employees—as Judge Moses aptly explained, although not strictly couched in hallmark aspirational language, it was nevertheless a nonactionable statement "expressing the familiar aspiration that all corporate employees, including the most senior officers, hold themselves to the same ethical standards." (R&R 19 n.10.)  Other Courts in this District agree.  *See, e.g.*, *Lopez*, 173 F. Supp. 3d at 26, 28–29 (statement that "the Code 'applies to all of its employees, including its Chief Executive Officer and its Chief Financial Officer'" was "inherently immaterial puffery" (citing *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard Co.*, 52 F. Supp. 3d 961, 964–66 (N.D. Cal. 2014) (same), *aff'd*, 845 F.3d 1278 (9th Cir. 2017))); *see also Liberty Tax*, 2020 WL 5807566, at *2 (statement that a "remediation plan consisted of modifications and improvements to [the company's] internal controls" was inactionable puffery).

Moreover, Plaintiffs have not alleged that the statement was false—the Company ***did enforce*** its policies against Hirschhorn.  As Judge Moses specifically found, "plaintiffs' characterization of the facts – particularly with regard to Teladoc's 'nonenforcement' of its ethical standards" is "a somewhat 'fictional version of the SAC,' which gets events out of order . . . and omits inconvenient facts," (R&R 22 (citation omitted)), including Plaintiffs' own allegation that the Company disciplined Hirschhorn after retaining an outside law firm to investigate (*id.* (citing SAC ¶ 42)).  Judge Moses thus concluded that, although "Hirschhorn may have been insufficiently punished, in plaintiffs' eyes," Plaintiffs' own allegations concede that "he was not uninvestigated, nor entirely unpunished."  (*Id.*)  Plaintiffs' hindsight opinion that the punishment was inadequate

does not render false the Company's statement that the CBCE applied to all employees.

With respect to the challenged statement that the Company "will not tolerate" retaliation, such a statement plainly *is* aspirational.  Like any other prohibition on misconduct in the CBCE, it is a guideline, not a factual representation, much less a guarantee, that no retaliation had occurred or would occur at the Company.  As such, it is not actionable.  *See, e.g.*, *CBS*, 433 F. Supp. 3d at 533 (statement that "[CBS *will not tolerate* retaliation" was "far too general and aspirational" to be actionable); *Schiro*, 396 F. Supp. 3d at 298 (statement that company "does not tolerate bribery" was not actionable, and statement that company "reject[s] all forms of corruption" was a "guideline" in company's ethics code, "foreclosing an inference that this was a factual statement"); *Fogel* v. *Vega*, 759 F. App'x 18, 21, 23 (2d Cir. 2018) (statement that "[w]e do not tolerate . . . bribery, corruption or unethical practices" held inactionable).

Moreover, Plaintiffs have not alleged that the statement was false.  Judge Moses found that "while plaintiffs do allege that McKay was 'fired,'" they also allege that "an entire year passed between her 'whistleblower' memo and her termination," undermining their "speculation that she lost her job as 'retaliation' for that memo, or as part of a plot to 'punish[] the whistleblowers.'"  (R&R 22 (quoting Pls.' Opp'n at 13).)  Judge Moses also explained that the Plaintiffs' conclusory allegations that the Company retaliated against the second (anonymous) whistleblower were "simply not 'plausible'" because they rested on "even thinner" allegations.  (*Id.* 22 n.2.)  In particular, Judge Moses reasoned that "[t]here is no allegation that [they] received 'harassing emails' or otherwise experienced any adverse treatment plausibly related to the report that he or she made in 2016," and that Plaintiffs concede that that employee "remained at [the Company] until January 2018."  (*Id.* (citing SAC ¶¶ 31, 45).)  In sum, Plaintiffs have failed to plead plausible, non-conclusory facts reflecting that any so-called retaliation even occurred—and

even assuming *arguendo* one or two so-called retaliatory actions took place, that does not render false the general statement that retaliation is not tolerated.[11]

> **(b)** **Plaintiffs' Do Not Adequately Allege Such Pervasive or Antithetical Misconduct that Any Aspirational Statements Were Materially False or Misleading**

Plaintiffs' last resort is to argue that "even to the extent [Defendants' ethics] statements were merely aspirational, investors could have relied at least on the notion that the Company held such aspiration." (Obj. 15.) Plaintiffs contend that the challenged statements "are materially misleading by representing to investors that Defendants had aspirations of compliance with, and enforcement of, the CBCE that they did not actually hold." (*Id.* at 16.) This argument fares no better.

Plaintiffs invoke a truly "rare" exception, *CBS*, 433 F. Supp. 3d at 532, to the general rule that aspirational statements in a code of conduct are not actionable, relying primarily on two cases: *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017), and *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018). (Obj. 11–12, 15, 18.) In so doing, however, Plaintiffs willfully ignore the "unique circumstances" of those cases, *see CBS*, 433 F. Supp. 3d at 532—circumstances that Judge Moses correctly found were not present here. (*See* R&R 19–23.)

In *Banco Bradesco*, a case against a Brazilian bank involving an eleven-year bribery scheme, this Court concluded that while statements in the company's code of conduct were "inherently aspirational" and not actionable, 277 F. Supp. 3d at 658, defendants' repeated public

---

[11] Plaintiffs contend that Judge Moses "fails to draw 'all reasonable inferences in the plaintiffs' favor,'" and was "not free to dismiss based on its 'disbelief of a complaint's factual allegations.'" (Obj. 13; *see also id.* 14, 16.) In reality, however, Plaintiffs' protest is that the Court is bound to blindly accept Plaintiffs' "legal conclusion[s] couched as factual allegation[s]," even where these conclusions are "contradicted or undermined" by Plaintiffs own allegations in the SAC—which the Court was also bound to accept—and even though Plaintiffs' claims must meet a heightened pleading standard under Rule 9(b) and the PSLRA. *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 584–85 (S.D.N.Y. 2007). There is no such mandate in the federal courts.

statements in press releases and regulatory filings that "spoke about bribery and corruption specifically" were actionable where "context show[ed] that they were made in an effort **to reassure the investing public** about the Company's integrity, specifically with respect to bribery, ***during a time of concern***" with those very same issues, *id.* at 660 (emphasis added).

And in *Signet*, the court found that specific statements regarding anti-sexual harassment policies were actionable where plaintiffs alleged with particularity that they obscured the nature and extent of the "culture of 'pervasive' sexual harassment" "rampant at Signet at all levels, including among senior executives," and which was the subject of a private arbitration involving 200 employees' allegations. 2018 WL 6167889, at *5–6. Significantly, the court emphasized that the specific, actionable statements were "directly at odds with the conduct alleged," *id.* at *17, and **dismissed** claims premised on the remaining general statements "touting the importance of Signet's relationship with its employees and consumer trust in the Signet brand," finding those to be "the sort of broad, aspirational, and vague puffery statements that no reasonable investor could possibly consider significant in making investment decisions," *id.* at *18. Further, the court later stated that the "crux" of plaintiff's claim is that "***[i]n the face of a credible accusation (by way of another lawsuit)*** that Signet suffered from rampant sexual harassment . . . Defendants sought to reassure the investing public that Signet did not, in fact, have a toxic workplace." *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 231 (S.D.N.Y. 2019) (emphasis added).

*Banco Bradesco* and *Signet* are factually inapposite in numerous ways. Both cases took place in the context where a company, unlike Teladoc, was making specific statements "to reassure investors that nothing was amiss when faced with suspicions of internal malfeasance." *CBS*, 433 F. Supp. 3d at 532 (noting the limited exceptions). Further, unlike plaintiffs in *Banco*

*Bradesco* and *Signet*, Plaintiffs here do not allege with any particularity any wrongdoing that was "anathema" to the challenged statements. *CBS*, 433 F. Supp. 3d at 532. Indeed, as Judge Moses explained, whereas *Banco Bradesco* involved bribery, which clearly violated Banco Bradesco's code of conduct, and whereas *Signet* involved pervasive sexual harassment, which clearly violated Signet's code of conduct, Plaintiffs fail to adequately allege that any provisions of Teladoc's CBCE were clearly violated. (R&R 11 n.9; *id.* at 21 & n.12.) And, finally, unlike plaintiffs in *Banco Bradesco* and *Signet*, Plaintiffs fail to allege any widespread practices by Teladoc that called into question whether the CBCE reflected the Company's true policy. Plaintiffs at best allege the "failure to disclose a single 'inappropriate' (but consensual) relationship, conducted by a single executive, who was more lightly disciplined than plaintiffs believe he should have been." (R&R 23.) This is insufficient.[12]

　　　　Plaintiffs fault Judge Moses's distinction of *Banco Bradesco* and *Signet*, arguing that the relevant misconduct need not be "pervasive" (or fit within any of the other discrete exceptions), where Hirschhorn's alleged misconduct (and the Company's purported response) caused the stock to drop 6.69% when the information was disclosed. (Obj. 16–17.) Plaintiffs' focus on the stock drop is a red herring. Courts can and have concluded in this context that alleged misstatements are immaterial as a matter of law even where plaintiffs allege a stock price drop in response to a disclosure. *See, e.g.*, *CBS*, 433 F. Supp. 3d at 529, 530–36. Nor is Plaintiffs' emphasis on the fact that Hirschhorn was the "third highest officer in the company" availing. (Obj. 16.) *CBS*, after all, involved (well pled) allegations of misconduct against CBS's long-time CEO

---

[12] *CBS* is again instructive. After rejecting as conclusory plaintiffs' allegation "that sexual harassment was pervasive and widespread at CBS," which was "supported by only a handful of examples," the *CBS* court distinguished *Signet*, finding that absent non-conclusory allegations of pervasive misconduct, the alleged misconduct at issue "although reprehensible [was insufficient to] plausibly allege[] that CBS, in fact, held none of its asserted aspirations." 433 F. Supp. 3d at 533; *see also id.* at 535.

and Chairman.  433 F. Supp. 3d at 526.  More fundamentally, Plaintiffs' reasoning ignores the basic principle from which the rarity of the exception they seek to invoke is borne: "it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all."  *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d at 755–56; *accord, e.g.*, *PJT Partners Inc.*, 2017 WL 3995606, at *6 n.6 ("The fact that a code of conduct prohibits certain conduct by employees is not a factual representation that those policies will always be followed by all employees or that they are 100% effective.").  As a result, the fact that a single executive is alleged to have violated company policy, even if true, is insufficient to fit this exception.

### 2.   Statements Regarding Key Personnel Were Not Materially False or Misleading

Plaintiffs also challenge the Company's risk disclosures regarding Teladoc's dependence on its senior management team and the potential for employment claims to drain resources and divert management attention.  (SAC ¶¶ 57–58, 68, 74.)  Plaintiffs do not allege that these risk disclosures are affirmatively false.   Instead, Plaintiffs repeat their theory that the omission of the Hirschhorn-Griffin relationship rendered the risk disclosures misleading.  But as Judge Moses accurately explained, however, there is no "duty to disclose uncharged unadjudicated wrongdoing," and there must be a specific nexus between the omitted misconduct and the existing risk disclosures.  (R&R 24 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 184, and citing *Fries* v. *Northern Oil and gas, Inc.*, 285 F. Supp. 3d 706, 718–19 (S.D.N.Y. 2018).); *see also Liberty Tax*, 2020 WL 5807566, at *4 (company had no duty to disclose reason for CEO's termination, and statement that it had engaged a "deliberate succession planning process" was not misleading because it was insufficiently connected to the termination).  Judge Moses thus correctly concluded that Teladoc's general personnel disclosures did not become

misleading simply "for having omitted unadjudicated allegations that might one day lead to his ouster." (R&R 26.)

Without citing any contrary authority, Plaintiffs challenge in a single paragraph Judge Moses's conclusion as "merely adopt[ing] Defendants' suggestion." (Obj. 20–21.) But Plaintiffs ignore Judge Moses's reliance on *CBS* and *Papa John's*, both of which explicitly rejected the exact argument Plaintiffs make here (and on much more egregious facts). Specifically, both courts held that the failure to disclose the executives' misconduct—which allegedly increased the risk of their departures—did not render the risk disclosures misleading because "[a]n increase in a risk does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading." *Papa John's*, 444 F. Supp. 3d at 563 (quoting *CBS*, 433 F. Supp. 3d at 538). This reasoning applies with even greater force here, where Plaintiffs assert the same nondisclosure theory as to Hirschhorn, who is not alleged to have been "central to the [Teladoc] brand," *id.* at 554, who is not even mentioned by name in the challenged risk disclosures (*see* SAC ¶ 57), and whose alleged misconduct was far less serious (and thus less likely to lead to dismissal or resignation) than the executives in *CBS* and *Papa John's*.[13]

## C.   Plaintiffs' Claims Also Fail Because Plaintiffs Fail to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter

For the reasons stated, the R&R is correct, and fully supports the dismissal of Plaintiffs' claims. But even if Plaintiffs had identified any material false statement, Plaintiffs

---

[13] Plaintiffs nevertheless assert that Judge Moses's R&R "mischaracterizes the relevant inquiry." (Obj. 20.) Quite the opposite is true. While Plaintiffs cite *Papa John's* for the proposition that the relevant inquiry is "whether Defendants' representations regarding Defendant Hirschhorn 'would have been viewed by the reasonable investor as having significantly altered the total mix of information available'" (Obj. 20), Plaintiffs ignore the fact that materiality is just one element of a securities fraud claim. Just as Plaintiffs ignore *Papa John's* (and *CBS's*) contrary holding on this exact issue, Plaintiffs also ignore the two paragraphs following their citation in *Papa John's*, which explains that "[i]n addition to being material, a statement or omission must be false or misleading to be actionable" and that "*[t]o base a claim on an omission—such as a failure to disclose a material business risk—a plaintiff must also plead that the defendant had a duty to disclose the omitted information*." 444 F. Supp. 3d at 559. As Judge Moses observed (and as Plaintiffs do not appear to dispute), Plaintiffs have shown neither.

would still be required to plead a strong inference that Defendants made that statement with scienter.  Judge Moses's R&R declined to reach this issue, but should this Court identify any material false statement, Defendants incorporate herein their briefs and supplemental letters demonstrating that Plaintiffs fail to plead scienter as an alternate ground for dismissal.

## III.   THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DENYING PLAINTIFFS LEAVE TO AMEND

Judge Moses correctly recommended that the SAC be dismissed without leave to amend.  (R&R 27.)  Plaintiffs have already twice amended their complaint; had another opportunity to seek to amend after the parties exchanged pre-motion letters; and even used their briefs to add allegations that had not been pleaded.  A third bite at the apple would be futile, and Judge Moses correctly declined to allow another amendment.  *See Krys* v. *Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) (affirming dismissal of a fraud claim with prejudice, even where plaintiffs proposed new pleadings, where amendment would be futile); *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *20 (S.D.N.Y. Mar. 30, 2018) (dismissing fraud claim with prejudice, explaining that the "Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading"), *aff'd*, 764 F. App'x 127 (2d Cir. 2019).

Plaintiffs twist the record to complain that Defendant's decision to consent to their second amendment somehow prevented them from a full opportunity to amend now.  (Obj. 22 (quoting *Ulbricht* v. *Ternium S.A.*, 2020 WL 5517313, at *12; *Schiro*, 396 F. Supp. 3d at 309).) But in addition to two amendments, and full briefing and argument, Plaintiffs also received the benefit of a pre-motion conference (after pre-motion letters) with this Court.  Under such circumstances, "Plaintiffs [are] not entitled to an advisory opinion from the Court informing them

of the deficiencies in the complaint and then an opportunity to cure those deficiencies." *Bellikov* v. *Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (affirming *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend where plaintiffs "had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint")); *accord, e.g.*, *Morgan Art Found. Ltd.* v. *McKenzie*, 2019 WL 2725625, at *20 (S.D.N.Y. July 1, 2019) (dismissing with prejudice where party "filed its third amended complaint after receiving a pre-motion letter . . . outlining the deficiencies in its second amended complaint, but . . . did not cure the deficiencies"); *BankUnited, N.A.* v. *Merritt Envt'l Consulting Corp.*, 360 F. Supp. 3d 172, 191–92 (S.D.N.Y. 2018) (denying leave to amend where plaintiff already amended once, after having the benefit of pre-motion letters and court's observations during pre-motion conference). Neither *Schiro* nor *Ulbricht* considered this distinguishing factor. In fact, the *Ulbricht* court had denied Defendants motion for a pre-motion conference in advance of the motion to dismiss. 2020 WL 5517313, at *3.

Plaintiffs' request for a third chance to amend also rings hollow for the additional reason that they have failed to explain—whether in their opposition brief, at oral argument, or in their Objection—how they actually propose to cure the fatal deficiencies in their pleadings. *Hayden* v. *County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Indeed, in response to questioning by Judge Moses about what Plaintiffs might add in a third amended complaint, all Plaintiffs' counsel could muster was the vague suggestion that "we would use the fact that it has been a longer period of time and we would have access to more information now we think than we have in the past." (Tr. at 64:3–5.) This alone is grounds for denial of leave. *See, e.g.*, *Liberty Tax*, 2020 WL

24

5807566, at \*5 (affirming denial of leave to amend fraud claim where "nothing in the record suggests that another complaint could remedy the legal deficiencies"); *Hayden*, 180 F.3d at 53 (finding that although "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," where a plaintiff is "unable to demonstrate that he would be able to amend his complaint in a manner which should survive dismissal, opportunity to replead is rightfully denied"); *Ferrellgas*, 2018 WL 2081859, at \*20–21.[14]

## <u>CONCLUSION</u>

For the reasons discussed above, Magistrate Judge Moses's R&R should be adopted in its entirety, and the SAC should be dismissed with prejudice.

Dated:   October 2, 2020

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

BY: _____/s/ Audra J. Soloway_____
Daniel J. Kramer
Audra J. Soloway
Caitlin E. Grusauskas
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
dkramer@paulweiss.com
asoloway@paulweiss.com
cgrusauskas@paulweiss.com

*Attorneys for Teladoc Health, Inc., Jason
Gorevic, and Mark Hirschhorn*

---

[14] *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015) is not on point. There, the district court "presented Plaintiffs with a Hobson's choice" of either agreeing to re-plead before a motion to dismiss was briefed and decided or to forfeit the opportunity to re-plead. *Id.* at 190.  Plaintiffs here have been put to no such choice.  In any event, as Judge Moses explained, even *Loreley* notes that district courts may deny such leave "where the request gives no clue as to 'how the complaint's defects would be cured.'"  *Id*. at 190.