USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JON REINER, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

                  -against-

TELADOC HEALTH, INC., JASON GOREVIC, and MARK HIRSCHHORN,

                             Defendants.
------------------------------------------------------------------X

1:18-cv-11603-GHW

MEMORANDUM OPINION AND ORDER

Defendant Mark Hirschhorn, a senior executive at Defendant Teladoc Health, Inc. ("Teladoc" or the "Company"), had an affair with a low-level employee of the Company. He was promoted to become Chief Operating Officer of the Company in the midst of his affair. When the Company learned of the affair, it launched an investigation and disciplined Hirschhorn. Lead Plaintiffs assert that the Company's response to the affair was wan, and that the Company retaliated against two of the employees who had reported on the inappropriate relationship. In these ways, Lead Plaintiffs claim, the Company acted in a manner that was not consistent with the Company's public statements about its ethics policy and program. When the public found out about the relationship, Teladoc's stock dropped 6.69% percent. As a result, Lead Plaintiffs brought this action.

On September 4, 2020, Magistrate Judge Barbara Moses issued a Report and Recommendation (the "R&R") in response to Defendants' motion to dismiss the complaint. Dkt. No. 65. Judge Moses recommended that the claims against Defendants be dismissed for failure to allege any materially false or misleading statement because the statements at issue were inactionable puffery. Because the Court agrees with the recommendations provided in the R&R with limited

exceptions that do not affect the outcome of this motion, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

The R&R describes in detail the facts and procedural history of this case. The Court refers the reader to the R&R for a more comprehensive description of the facts at issue here, but a short summary is warranted.

Mark Hirschhorn, Executive Vice President ("EVP"), Chief Financial Officer ("CFO"), and eventually Chief Operating Officer ("COO") at Teladoc, had an "an affair with a low-level employee," Charece Griffin, beginning in May 2014. Second Amd. Compl. ("SAC"), Dkt. No. 35, ¶ 28. Griffin regularly discussed their relationship with other employees at the Company. *Id.* at ¶ 5. She "told her coworkers she and Hirschhorn liked to trade [Teladoc's] stock together" and that he would "tell her when he thought there were good opportunities to sell some shares." *Id.* at ¶ 28.

On September 28, 2016, Hirschhorn was promoted to COO. *Id.* at ¶ 26. In October 2016, Griffin's "ultimate boss," Amy McKay, submitted an eight-page memorandum to the Teladoc Legal and Human Resources departments describing the "inappropriate relationship" between Hirschhorn and Griffin. *Id.* at ¶ 6. Teladoc retained an outside law firm to conduct an investigation, which "revealed inappropriate conduct." *Id.* at ¶¶ 42–43. In November of that year, the Company's chief legal officer interviewed McKay. *Id.* at ¶ 36.

"On December 27, 2016, the Company entered into an amended employment contract with Hirschhorn, with two minor slaps on the wrist: a prohibition from violating the employee handbook (which, presumably, he had never been exempt from following in the first place) and, for a period of one year, a suspension of the scheduled share vesting awarded to him as part of his compensation." *Id.* at ¶ 43.

After months of "bitterly complaining and arguing with the HR and Legal departments over the [Mark Hirschhorn] decision," McKay was fired in October 2017. *Id.* at ¶ 44. Another Teladoc employee was also bullied and ultimately fired by a manager who reported to Hirschhorn after reporting Hirschhorn's relationship. *Id.* at ¶ 45.

Eventually, on December 5, 2018, the Southern Investigative Research Foundation ("SIRF") published a report revealing the affair. *Id.* at ¶ 13. The next day, Teladoc's stock fell 6.69%. *Id.* Plaintiff Jon Reiner initiated this action a week after the SIRF report was published, on behalf of himself and all others who purchased or otherwise acquired Teladoc securities between March 3, 2016 and December 5, 2018. Dkt. No. 1. He named Hirschhorn, Teladoc, and Teladoc's CEO Jason Gorevic as defendants.

After Wayne Arcuri, Badruddin Salimbhai, and David Williams were appointed Lead Plaintiffs, they filed the Second Amended Complaint—the operative pleading. SAC. Lead Plaintiffs allege that Defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by making misleading public statements which were demonstrated to have been false or misleading by Hirschhorn's misconduct and Teladoc's tepid response. *Id.* ¶ 1. The alleged misstatements fall into two categories: statements regarding the Company's ethics, including Teladoc's Code of Business Conduct and Ethics ("CBCE"), and risk disclosures regarding its dependence on its senior management team. *Id.* ¶¶ 57–80.

Defendants moved to dismiss the Second Amended Complaint in its entirety on September 13, 2019. Dkt. No. 46. Judge Moses held oral argument on May 15, 2020. *See* Tr. of May 15, 2020 Tel. Conf. ("Tr."), Dkt. No. 63. In her September R&R, Judge Moses recommended that the motion to dismiss be granted because Lead Plaintiffs had failed to allege any material misstatement or omission. R&R at 1. She found that the statements regarding the Company's code of conduct

3

were "inactionable puffery" and that the key personnel disclosures were not misleading. *Id.* at 17–25. Judge Moses did not reach the issue of scienter because she concluded that Lead Plaintiffs had failed to plead any actionable misstatements or omissions. *Id.* at 26. Because she found that Lead Plaintiffs had not pleaded a primary securities fraud violation, she also recommended dismissing Lead Plaintiffs' claim for "control person liability" under Section 20(a) of the Exchange Act. *Id.* Finally, Judge Moses recommended denying leave to amend the complaint. *Id.* at 27.

On September 18, 2020, Lead Plaintiffs filed timely objections to almost every aspect of the R&R (the "Objections"). Dkt. No. 66. Defendants responded to the Objections on October 2, 2020 (the "Opposition"). Dkt. No. 68. Lead Plaintiffs filed their reply on October 6, 2020. Dkt. No. 69.

While the Objections take aim at all of Judge Moses' recommendations, they focus on her recommended dismissal of the Section 10(b) claims related to statements regarding the Company's ethics and the CBCE, as well as her denial of leave to amend the complaint. Lead Plaintiffs argue that the context in which Defendants' statements were made demonstrates the false and misleading nature of Defendants' alleged misrepresentations. Objections at 10–12. Lead Plaintiffs further argue that Defendants' statements were not mere aspirational representations, and that even if they were aspirational, they were actionable because they were materially false and misleading. *Id.* at 12–21. In lodging the Objections, Lead Plaintiffs argued that Judge Moses inappropriately made factual determinations and failed to draw plausible inferences in their favor as required on a motion to dismiss, and inaccurately focused on the relationship itself, rather than the Company's response to that relationship.

## II. STANDARD OF REVIEW

With respect to dispositive motions, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A

district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citations omitted). Lead Plaintiffs have submitted proper substantive objections to almost every aspect of the R&R, so the Court reviews the R&R *de novo*.

### III. ANALYSIS

#### a. Motion to Dismiss

The Court adopts the conclusions of Judge Moses' thorough and well-reasoned R&R. The R&R properly laid out the applicable legal standard and the allegedly fraudulent statements at issue. The Court adopts in full the reasoning and conclusions of the R&R with respect to the statements regarding key personnel, scienter, and Section 20(a) "control person liability."[1] R&R at 24–26. With respect to statements about the Company's ethics and statements in the CBCE, as explained below, the Court declines to adopt certain aspects of the R&R's reasoning, but those modifications do not impact the outcome: Defendants' motion to dismiss the Second Amended Complaint is granted.

At the outset, the Court notes that two statements at the core of the Objections are not properly before the Court because they were not specifically pleaded in the Second Amended Complaint. Securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances

---

[1] Because the Objections do not focus on these aspects of the R&R, the Court will not set forth a fulsome analysis here. But the Court has reviewed the R&R and adopts its analysis in full.

constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the complaint must, among other things, "specify the statements that the plaintiff contends were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Furthermore, under the PSLRA, securities fraud plaintiffs alleging an untrue statement of material fact or an omission of a material fact necessary to make statements not misleading must specify "each statement alleged to have been misleading." 15 U.S.C. § 78u-4(b)(1).

The CBCE stated that it "will be strictly enforced throughout the Company and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action such as dismissal or removal from office" and that Teladoc "will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith." SAC, Ex. D. at 4, 5. The Objections lean heavily on these statements. But the statements are not included in the Second Amended Complaint—they are merely in the copy of the CBCE attached as an exhibit. Defendants correctly argue that Lead Plaintiffs cannot rely on those statements in response to the motion to dismiss. Opposition at 5. Because the Second Amended Complaint did not specify those statements as allegedly fraudulent, as required by Rule 9(b) and the PSLRA, the Court does not consider them here—they were not adequately pleaded as the basis for Lead Plaintiffs' claims.

With respect to the statements in and about the CBCE that are specifically identified in the Second Amended Complaint, Judge Moses correctly determined that Lead Plaintiffs have not adequately pleaded that Defendants are responsible for materially false misstatements or omissions. As explained in substantial detail by Judge Moses, "[c]orporate codes of conduct tend to be 'general statements about reputation, integrity, and compliance with ethical norms [that] are inactionable puffery'—as opposed to being statements of facts—and are, therefore, generally incapable of forming the basis for a Section 10(b) claim." *Constr. Laborers Pension Tr. for S. California v. CBS Corp.* ("*CBS*"), 433 F. Supp. 3d 515, 532 (S.D.N.Y. 2020) (quoting *Singh v. Cigna Corp.*, 918 F.3d 57, 63

(2d Cir. 2019)).  She accurately found that the statements at issue "are precisely the type of 'standard and vague assurances' that the courts routinely find too insubstantial to be the basis of a securities fraud claim, because 'no reasonable investor could have relied on them.'"  R&R at 18 (citing *Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 560 (S.D.N.Y. 2020)).  She was also correct in finding that the "CBCE explicitly uses 'aspirational and hortatory' language, which does not 'invite reasonable reliance.'"  *Id.* at 19 (citations omitted).

Judge Moses also correctly found that Lead Plaintiffs had not adequately pleaded that, in the context described in the complaint, the statements identified were materially false or misleading.  She found that the alleged misconduct was not so pervasive "as to plausibly demonstrate that the [C]ompany 'in fact, held none of its asserted aspirations.'"  *Id.* at 19–20 (citing *CBS*, 433 F. Supp. 3d at 533).  She also appropriately considered the context in which the statements were made, which—as Lead Plaintiffs correctly pointed out—must be considered in assessing the allegedly fraudulent statements.  *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647 (S.D.N.Y. 2017) ("Whether a representation is mere puffery depends, in part, on the context in which it is made.").  Judge Moses correctly concluded that, unlike in the cases cited by Lead Plaintiffs, "there is no allegation that [D]efendants' statements were made 'to reassure investors that nothing was amiss when faced with suspicions of internal malfeasance.'"  R&R at 21 (citing *CBS*, 433 F. Supp. 3d at 532).  Nothing about the context of the statements suggests that a reasonable investor would view these statements "as having significantly altered the 'total mix' of information made available."  *ECA, Local 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)).  Therefore, with the exceptions described below, the Court adopts the R&R's reasoning and conclusions.

The Court does not adopt footnote 10 of the R&R, which described the statement that the CBCE applied to "all of its employees, officers, and directors" as aspirational.  R&R at 19 n.10.

7

That is a statement of fact that can be demonstrably proven true or false. For example, if, by its terms, the CBCE did not apply to directors, the statement would be untrue. But this does not change the analysis because Lead Plaintiffs do not allege that the statement was false or misleading—that is, they have not alleged that the CBCE did not apply to everyone at Teladoc. Moreover, the statement cannot be reasonably understood as a guarantee that every employee, officer, and director complied with the CBCE at all times. *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 756 (S.D.N.Y. 2017) ("There is an important difference between a company's announcing rules forbidding bribery and its factually representing that no officer has engaged in such forbidden conduct."). For the same reason, Lead Plaintiffs have not adequately pleaded that the statement that "each of our directors and employees is required to report suspected or actual violations [of the CBCE]," SAC ¶ 66, was materially false or misleading. Therefore, the Court's decision not to adopt the rationale of footnote 10 does not impact the dismissal of Lead Plaintiffs' claims.

The Court agrees with Lead Plaintiffs that elements of the R&R appear not to have drawn all reasonable inferences in Lead Plaintiffs' favor, as required on a motion to dismiss. *See, e.g., Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (noting that on a motion to dismiss, courts "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor"). And certain statements in the R&R could be construed as determinations regarding the credibility of the facts asserted in the complaint under the rubric of evaluating the "plausibility" of the allegations. *See In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 437 (S.D.N.Y. 2015) (noting that the court "may not weigh the evidence in the guise of a plausibility analysis"). These conclusions can principally be found on page 22 of the R&R.

For example, the R&R seems to discredit certain of the allegations regarding the pleaded instances of retaliation. The R&R points to inconsistencies in the allegations, and appears to discount them as a result. R&R at 22 (noting that "while plaintiffs do allege that McKay was 'fired,' an entire year passed between her 'whistleblower' memo and her termination, which is somewhat inconsistent with plaintiffs' speculation that she lost her job as 'retaliation' for that memo or as part of a plot to 'punish[] the whistleblowers.'"). It is questionable that, drawing the inferences in the light most favorable to the Lead Plaintiffs, the gap in time between the report and the termination was "inconsistent" with retaliation. After all, during that year, McKay spent "months bitterly complaining and arguing with the HR and Legal Departments" over the Hirschhorn decision. SAC ¶ 44. And in the intervening months, McKay, and another former employee received harassing emails that led them to file police reports. *Id.* ¶¶ 37–41. In light of the protracted struggle with the Company's HR and legal departments, and drawing all inferences in favor of Lead Plaintiffs, as the Court must, it is not implausible that her firing a year later was the result of retaliation. This allegation regarding the retaliatory termination of McKay is sufficient.

The Court agrees with the R&R's statement that allegations regarding the retaliatory termination of "FE2" are "thinner" than those involving McKay. *See* R&R at 22 n.13. But the Court does not adopt note 13 of the R&R. The note describes the allegations as implausible. That conclusion rests on a critique of the factual allegation that the employee was "bullied" because it was vague: the complaint did not specify "of what sort, by whom, and over what period of time." *Id.* As a result, Lead Plaintiffs mount their argument that the R&R again discredited the truthfulness of the allegation that FE2 was bullied because of the lack of that additional factual detail. Similarly, the R&R raises *sua sponte* that the allegation that the employee was fired by "a manager who reported to Hirschhorn" means that FE2 could have been fired by anyone at the company because by then Hirschhorn was COO "which likely made *every* Teladoc manager his direct or indirect report." *Id.*

9

Again, as worded, the R&R could be read, as Lead Plaintiffs do, to discredit the factual accuracy of the pleaded allegations. The allegation is thin, and is arguably conclusory in its invocation of the talisman of "retaliation" with limited supporting factual detail. But if the allegation is insufficient, it is because of that deficiency, not because the Court does not credit the factual assertions in the complaint.

Lead Plaintiffs' critique of the R&R's factual conclusion that Teladoc took the memo reporting the Hirschhorn affair seriously, R&R at 22, also has sufficient merit for the Court to decline to adopt that aspect of the R&R.

However, these differences with the R&R which are supported by the Objections do not impact the Court's analysis of the ultimate question presented here. Those facts concern the Company's response to the affair, which the Objections take pains to emphasize. *See, e.g.,* Objections at 14 ("[T]his case is not primarily about the violation; it is about the Company's response."). But the statements in and about the CBCE implicated by the Company's response are the sections of the CBCE that say it "will be strictly enforced throughout the Company and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action such as dismissal or removal from office" and that Teladoc "will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith." SAC, Ex. D. at 4, 5. As the Court previously noted, because these statements were not specifically identified in the Second Amendment Complaint as fraudulent, the Court does not consider them.[2] As a result, while the Court declines to adopt in full the R&R's treatment of the facts regarding Teladoc's response to the affair, those facts do not render materially false or misleading the

---

[2] The Court takes no position as to whether Lead Plaintiffs would have stated a claim for securities fraud had they specifically identified these statements in the Second Amended Complaint.

10

statements that were adequately pleaded in the Second Amended Complaint. Accordingly, Defendants' motion to dismiss the Second Amended Complaint is granted.

### b. Leave to Amend

The Court also departs from the R&R's recommendation that the Court deny leave to amend the complaint. In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend," unless the plaintiff has had a prior opportunity to amend its complaint or the allegations were made after full discovery in a related case. *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986). Although Lead Plaintiffs have already amended their complaint, they have not yet had an opportunity to do so in response to an opinion of the Court. Accordingly, the Court does not conclude that allowing them to amend once again would be futile. The Court knows of at least one modification to the complaint that Lead Plaintiffs wish to add—the alleged violations of the sections of the CBCE that, as Defendants note, were not specifically identified as fraudulent in the Second Amended Complaint. And the Court does not conclude that Lead Plaintiffs cannot plead additional facts that would make those, or other statements by Defendants, materially misleading. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015). Lead Plaintiffs are granted leave to amend their complaint.

### IV.   CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint is GRANTED. Lead Plaintiffs are granted leave to amend their complaint. Lead Plaintiffs are directed to file any amended complaint within thirty days of the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 46.

SO ORDERED.

Date: November 29, 2020

_____
GREGORY H. WOODS
United States District Judge